IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 13, 2018 Session

## NATIONWIDE MUTUAL FIRE INSURANCE COMPANY v. MEMPHIS LIGHT, GAS AND WATER

**Appeal from the Circuit Court for Shelby County**
**No. CT-001740-17     Rhynette N. Hurd, Judge**

_____

### No. W2017-02551-COA-R3-CV

_____

Plaintiff/Appellant Nationwide appeals the trial court's grant of Defendant/Appellee's motion to dismiss for failure to state a claim for which relief can be granted. Defendant's motion was based on the argument that Plaintiff's claim was time-barred pursuant to the Tennessee Governmental Tort Liability Act, and that Tennessee Code Annotated section 20-1-119 did not allow Plaintiff to timely add Defendant to the suit. Because we conclude that the trial court incorrectly applied Tennessee's comparative fault statute, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Russell C. Rutledge, Memphis, Tennessee, for the appellant, Nationwide Mutual Fire Insurance Company.

Lang Wiseman and Will Patterson, Memphis, Tennessee, for the appellee, Memphis Light, Gas and Water.

### OPINION

### Background

This case was initiated after a fire damaged the home of Freddie and Linda Lavallais on August 5, 2015. Nationwide Mutual Insurance Company ("Nationwide" or "Appellant") insured the Lavallais home and is the subrogee under the Lavallais's insurance policy. As such, Nationwide now brings this action as the real party in interest.

Nationwide filed its original complaint against Brass-Craft Manufacturing Company ("Brass-Craft") on April 19, 2017, alleging that the fire in the Lavallais home was caused by the failure of a gas flex line manufactured by Brass-Craft. Brass-Craft answered the complaint on May 24, 2017; in its answer, Brass-Craft urged that the fire may have been caused by an electrical surge and/or by overhanging tree branches that had not been properly maintained by Memphis Light, Gas and Water ("MLGW" or "Appellee"). Brass-Craft went on to argue that Nationwide's claim should be denied due to the fact that MLGW was an indispensable party that Nationwide failed to name in its complaint.

In response to the allegations against MLGW, Nationwide filed an amended complaint on July 24, 2017. Therein, Nationwide added allegations as to MLGW, averring that MLGW was the owner and operator of the electrical distribution system that delivered and supplied power to the Lavallais home at the time of the fire. Nationwide alleged that MLGW was responsible for Nationwide's damages in that MLGW "failed to remove, repair and/or otherwise correct [a] dangerous condition existing within their electrical supply . . . [which] ultimately resulted in the losses alleged" by Nationwide. Nationwide also noted that the amended complaint was filed in a timely manner pursuant to Tennessee Code Annotated section 20-1-119.

After the amended answer was filed, Nationwide filed a notice of intent to nonsuit Brass-Craft on September 13, 2017. Thereafter, MLGW filed a motion to dismiss, arguing that the one-year statute of limitations applicable to MLGW under the Tennessee Governmental Tort Liability Act ("GTLA") had lapsed, thus foreclosing Nationwide's claim. In its motion, MLGW noted that Nationwide's claim was subject to two different statutes of limitation, the first being the three-year statute for property damage as alleged against Brass-Craft,[1] the second being the one-year GTLA statute applicable to MLGW. According to MLGW, Nationwide "did not commence [its] action within the statute of limitations *applicable to its claims against MLGW*; therefore, Nationwide cannot rely on the 90-day grace period" found in section 20-1-119. Simply put, MLGW asserted that despite the ninety-day grace period provided in Tennessee Code Annotated section 20-1-119, Nationwide's claim was nonetheless time-barred because the statute requires that the plaintiff's original complaint be filed "within the applicable statute of limitations," and Nationwide's claim against MLGW was not filed within one-year after the fire occurred.

The Circuit Court for Shelby County ("trial court") granted MLGW's motion to dismiss on December 1, 2017. In its final order, the trial court noted that the legal issue facing the court was how to construe the phrase "applicable statute of limitations" found in section 20-1-119(a). "Specifically, does the filing of the original complaint within the 'applicable statute of limitations' refer to the three (3) year statute applicable to

---

[1] Tenn. Code Ann. § 28-3-105 (noting that actions for injuries to real or personal property shall be commenced within three years from the accruing of the cause of action).

[Nationwide's] original claim against the original defendant Brass-Craft, or to the one year GTLA statute of limitations applicable to [Nationwide's] new claim against MLGW?" In answering this question, the trial court adopted MLGW's interpretation of section 20-1-119(a):

> Based on its analysis of the text of the statute and applicable case law, and the fact that the GTLA must be strictly construed, this Court finds that the phrase "applicable statute of limitations" found in Tenn. Code Ann. § 20-1-119 refers to the 1-year statute of limitations applicable the new claim [Nationwide] sought to assert against MLGW, and since [Nationwide's] original complaint was not within the one (1) year of the date of the damage-causing incident, [Nationwide] cannot rely on Tenn. Code Ann. § 20-1-119 to add MLGW as a defendant. Accordingly, any and all claims asserted against MLGW are time-barred and hereby dismissed.

From this order, Nationwide appeals.

## Issue Presented

As we perceive it, this appeal involves a single issue: whether Nationwide properly added MLGW as a defendant pursuant to Tennessee Code Annotated section 20-1-119, despite the fact that the one-year statute of limitations applicable to MLGW through the GTLA has lapsed.

## Standard of Review

Nationwide appeals from the trial court's grant of MLGW's motion to dismiss for failure to state a claim upon which relief can be granted. *See* Tenn. R. Civ. P. 12.02(6). "A Rule 12.02(6) motion tests the legal sufficiency of the plaintiff's complaint and not the strength of the plaintiff's evidence." ***Doe v. Sundquist***, 2 S.W.3d 919, 922 (Tenn. 1999) (citing ***Riggs v. Burson***, 941 S.W.2d 44, 47 (Tenn. 1997)). In deciding a Rule 12.02(6) motion, the court is required to construe the complaint in favor of the plaintiff, accepting the factual allegations as true, and deny the motion unless the plaintiff can establish no facts that would support a claim for relief. ***Id.*** When the grant of a Rule 12.02(6) motion is appealed, "we must take the factual allegations contained in the complaint as true and review the lower court's legal conclusions *de novo* without a presumption of correctness." ***Id.***

Moreover, when an issue on appeal requires statutory interpretation, we review the trial court's decision de novo with no presumption of correctness. ***Wade v. Jackson-Madison Cty. Gen. Hosp. Dist.***, 469 S.W.3d 54, 58 (Tenn. Ct. App. 2015). We must determine the Legislature's intent and purpose by reading the words of the statutes using their plain and ordinary meaning in the context in which the words appear. When the

language of the statute is clear and unambiguous, courts will not look beyond the plain language of the statute to determine its meaning. Further, this Court's goal in construing a statute is to "give full effect to the General Assembly's purpose, stopping just short of exceeding its intended scope." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010) (citing *Larsen-Ball v. Ball*, 301 S.W.3d 228, 232 (Tenn. 2010); *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009)). This Court seeks to construe statutes in a manner that "avoids conflict and facilitates harmonious operation of the law." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 869 (Tenn. Ct. App. 2005)).

## Discussion

The legal issue presented for review involves the interplay of two Tennessee statutes. First, the one-year statute of limitations enshrined in the GTLA, which mandates that an action under that section must be commenced within twelve months after the cause of action arises. Tenn. Code Ann. § 29-20-305(b). The GTLA is in derogation of the common law and must be strictly construed. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 83 (Tenn. 2001). Accordingly, claims for damages brought under the GTLA must strictly comply with the GTLA. Tenn. Code Ann. § 29-20-201(b)(3). "[S]tatutes of general application that conflict with the GTLA shall not apply to cases brought under the GTLA unless the General Assembly expressly states its intent that the general statute should apply to GTLA cases." *See Wade v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 59 (Tenn. Ct. App. 2015) (citing *Cunningham v. Williamson Cty. Hosp. Dist.*, 405 S.W.3d 41, 45 (Tenn. 2013)).

> The second salient statute, the comparative fault statute, provides that:
> (a) In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against that person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer alleging that person's fault, either:
>
> (1) Amend the complaint to add the person as a defendant pursuant to Tenn. R. Civ. P. 15 and cause process to be issued for that person; or
>
> (2) Institute a separate action against that person by filing a summons and complaint. If the plaintiff elects to proceed under this section by filing a separate action, the complaint so filed shall not be considered an original

- 4 -

complaint initiating the suit or an amended complaint for purposes of this subsection (a).

(b) A cause of action brought within ninety (90) days pursuant to subsection (a) shall not be barred by any statute of limitations. This section shall not extend any applicable statute of repose, nor shall this section permit the plaintiff to maintain an action against a person when such an action is barred by an applicable statute of repose.

(c) This section shall neither shorten nor lengthen the applicable statute of limitations for any cause of action, other than as provided in subsection (a).

Tenn. Code Ann. § 20-1-119. The statute also expressly provides that "[n]otwithstanding any law to the contrary, this section applies to suits involving governmental entities." Tenn. Code Ann. § 20-1-119(g). "[T]he General Assembly enacted this section in order to 'provide an injured party with a fair opportunity to bring before the court all persons who caused or contributed to the party's injuries.'" *Mann v. Alpha Tau Omega Fraternity*, 380 S.W.3d 42, 50 (Tenn. 2012) (citing *Townes v. Sunbeam Oster Co., Inc.*, 50 S.W.3d 446, 451 (Tenn. Ct. App. 2001)). In contrast to the GTLA, the Tennessee Supreme Court has "repeatedly held that section 20-1-119 must be construed liberally to effectuate its remedial purpose." *Id.* (citing several cases). In 1999, section 20-1-119 was amended to provide that the statute applies even to governmental entities otherwise governed by the GTLA. *See* Tenn. Code Ann. § 20-1-119(g) ("Notwithstanding any law to the contrary, this section applies to suits involving governmental entities."); *see also* 1999 Tenn. Laws Pub. Ch. 485 (H.B. 1173) (eff. June 17, 1999) (enacting subsection (g)).[2]

The operation of section 20-1-119 in a typical case is well-settled. A plaintiff files a claim against a defendant. The defendant thereafter raises the comparative fault of a non-party in its answer. So long as the initial complaint was filed within "the applicable statute of limitations," plaintiff then is allowed a ninety-day grace period to file an amended complaint naming the new party, or comparative tortfeasor. Tenn. Code Ann. § 20-1-119(a). Under this typical scenario involving two private defendants, both the claim against the original defendant and the claim against the comparative tortfeasor are governed by the same statute of limitations based on the type of claim alleged. What

---

[2] The Tennessee Supreme Court has previously acknowledged that through this enactment, the legislature expressly stated its intent for the comparative fault statute to apply to cases brought under the GTLA. *See* *Doyle v. Frost,* 49 S.W.3d 853, 860 (Tenn. 2001) (recognizing that following the amendment to section 20-1-119, governmental entities "should be treated, for the purposes of [amendments], like any other party"). The court further opined that treating governmental entities in this way "does not extend or enlarge the applicable statute of limitations period," nor does it "compromise the protections afforded by the statute of limitations provision of the GTLA, even when that provision is strictly construed." *Id.*

constitutes "the applicable statute of limitations" for determining the timeliness of the original suit and the concomitant ability of the plaintiff to rely on the ninety-day grace period is therefore usually not in doubt. The dispute in this case arises because, even though the claim is the same, the statutes of limitations applicable to the original claim against the private defendant, Brass-Craft, and the claim against the comparative tortfeasor, MLGW, are different. If the timeliness of the initial complaint rests on the statute of limitations applicable to Brass-Craft, there can be no dispute that the ninety-day grace period was triggered. If, however, the timeliness of the initial complaint is determined by reference to the statute of limitations applicable to MLGW, the ninety-day grace period is unavailable and the trial court was correct to dismiss the action.

Thus, the central dispute between the parties is the meaning of the phrase "applicable statute of limitations" as used in section 20-1-119(a), and whether the statute allows the joinder of a governmental defendant even where the one-year statute of limitations in the GTLA had lapsed at the time original complaint was filed. Appellant argues that "applicable statute of limitations" as first used in subsection (a) refers to the statute of limitations applicable to the plaintiff's *original* claim against the *original* defendant. According to the Appellant, the claim against MLGW survives because the original complaint was filed within the three-year property damage statute of limitations applicable to the claim against Brass-Craft,[3] and because the Appellant added MLGW as a defendant within ninety days of Brass-Craft naming MLGW in its answer.

In contrast, MLGW argues that all three occurrences of the phrase "applicable statute of limitations" in section 20-1-119(a) refer to the same statute of limitations and that this use of the phrase must mean the statute of limitations applicable to MLGW as that comparative tortfeasor. Because the Appellant filed its complaint more than one-year after the cause of action arose, and therefore outside the statute of limitations applicable to MLGW under the GTLA, MLGW contends that Appellant cannot benefit from the grace period provided in section 20-1-119(a).Appellee avers that to hold otherwise would be to contravene the plain language of section 20-1-119(a) and would result in an inappropriate judicial expansion of the GTLA.

The parties in this appeal insist that the dispute is an issue of first impression for this Court; such is not the case. Indeed, this Court addressed a similar question in ***Queen's Tree Surgery v. Metro. Gov't of Nashville and Davidson Cty.***, No. M2003-00228-COA-R3-CV, 2003 WL 22768689 (Tenn. Ct. App. Nov. 24, 2003). In ***Queen's***

---

[3] It is undisputed that the original complaint against Brass-Craft was timely under the property damage statute of limitations; however, the complaint was filed approximately twenty months after the cause of action arose. *See* Tenn. Code Ann. § 28-3-105. Thus, the original complaint was well outside the one-year limitation for a GTLA claim. It is likewise undisputed that "MLGW enjoys governmental immunity from liability pursuant to the Tennessee Governmental Tort Liability Act[.]" ***Fowler v. City of Memphis***, 514 S.W.3d 732, 737 (Tenn. Ct. App. 2016).

***Tree Surgery***, an accident that resulted in property damages occurred on June 27, 2000. ***Id.*** at *1. Rather convoluted procedure thereafter followed. Within the three-year statute of limitations applicable to property damage, the plaintiff filed suit against several defendants, including the Metropolitan Government of Nashville and Davidson County ("Nashville"). ***Id.*** Nashville filed a motion to dismiss based on the expiration of the GTLA statute of limitations. A few days later, a different defendant filed an answer claiming that the damage was caused by Nashville. ***Id.*** Within ninety days of the answer alleging comparative fault, the plaintiff nonsuited its original action against Nashville and was permitted to file an amended complaint again naming Nashville as a defendant pursuant to section 20-1-119. Nashville later appealed on the basis that the trial court should have granted its motion to dismiss.[4] ***Id.***

Part of Nashville's argument on appeal was that "since any suit brought under the GTLA must be brought within twelve months after the cause of action arises," allowing the plaintiff to name Nashville as a party in this manner would "frustrate the purposes of the GTLA." ***Id.*** at *3. In response, we held that "Tenn. Code Ann. § 20-1-119 clearly allows a party to be added within ninety days from the filing of the answer alleging such person's fault. Section (g) explains that the statute 'applies to suits involving governmental entities.'" ***Id.*** Thus, this Court has previously held that a complaint filed within the statute of limitations applicable to the original claim, in that case the three-year statute of limitations applicable to claims of property damage, was sufficient to trigger the ninety-day grace period for filing an amended complaint against a comparative tortfeasor, even though the original claim was not filed within the statute of limitations applicable to the comparative tortfeasor.

Although not controlling, *see* Tenn. Sup. Ct. R. 4(G)(1),[5] the decision in ***Queen's Tree Surgery*** is highly persuasive, as it addresses the exact situation presented in this case: an original defendant subject to a three-year statute of limitations and a comparative tortfeasor subject to a one-year statute of limitations. Additionally, the ***Queen's Tree Surgery*** panel expressly rejected Appellee's argument that allowing the claim to go forward would impermissibly expand the GTLA. ***Id.*** The strict statutory construction argument raised by Appellee in this case, however, does not appear to have been addressed by this Court in ***Queen's Tree Surgery***. As such, we will proceed to consider Appellee's contentions in that regard.

---

[4] The opinion does not state the ultimate resolution of the case in the trial court except that it favored the plaintiff.

[5] Rule 4(G)(1) provides, in relevant part that "[u]nless designated "Not For Citation," "DCRO" or "DNP" pursuant to subsection (E) of this Rule, unpublished opinions for all other purposes shall be considered persuasive authority."

The bulk of Appellee's argument on appeal is premised upon strict statutory construction of the comparative fault statute. Namely, Appellee argues that all three occurrences of the phrase "applicable statute of limitations" in section 20-1-119(a) refer to the same statute of limitations. Appellee's position is best explained by reference to its brief:

> [T]he phrase "applicable statute of limitations" is used three times in the comparative fault statute—all within a single sentence—and yet under Nationwide's interpretation, those exact same words would have different meanings . . . .
>
> In context, it is the final occurrence of the phrase "applicable statute of limitations" that conclusively forecloses Nationwide's argument before this Court. That occurrence creates the grace period and confirms that a plaintiff may assert a claim notwithstanding the expiration of the statute of limitations that would otherwise be applicable to the claim to be asserted against the prospective defendant, not the statute applicable to the original defendant. Indeed, the phrase "applicable statute of limitations" in that instance is quite clearly referring to the statute of limitations that would otherwise bar the claims against the prospective defendant (or, in this case, MLGW). No other reading of that provision would even make sense.

Appellee essentially argues that the "90-day grace period should only be triggered if the initial suit was likewise filed within the same 'applicable statute of limitations' as the claims to be asserted against the prospective defendant." Based on the Appellee's assertions, a reiteration of Tennessee's rules of statutory construction is helpful here.

The Tennessee Supreme Court has recognized that statutes are "not always clear" and that in the face of confusion over a statute, "we must resort to the rules of statutory construction and other external sources to ascertain the General Assembly's intent and purpose." *Lee Med.*, 312 S.W.3d at 527 (internal citations omitted). In the event that a statute creates ambiguity, "the courts should endeavor to give effect to the entire statute" and should "avoid basing their interpretation on a single sentence, phrase, or word." *Id.* This Court seeks to construe statutes in a manner that "avoids conflict and facilitates harmonious operation of the law." *Lee Med.*, 312 S.W.3d at 527 (citing *In re Audrey S.*, 182 S.W.3d 838, 869 (Tenn. Ct. App. 2005)). In doing so, we may "employ a number of presumptions with regard to the legislative process." *Id.* We may, for example, "presume that the General Assembly used every word deliberately and that each word has a specific meaning and purpose . . . [we] may also presume that the General Assembly did not intend to enact a useless statute, and that the General Assembly did not intend an absurdity." *Id.* Finally, in interpreting the language in statutes, "this Court is also bound by the general rules of grammatical construction." *Hawkins v. Case Mgmt., Inc.*, 165 S.W.3d 296, 300 (Tenn. Ct. App. 2004) (citing *Melton v. State*, 160 Tenn. 273, 23

S.W.2d 662 (Tenn. 1930); ***McCollum v. Huffstutter****,* No. M2002-00051-COA-R3-CV, 2002 WL 31247077 (Tenn. Ct. App. Oct. 8, 2002)).

The apparent confusion in the present case stems from the use of the term "applicable statute of limitations" in section 20-1-119(a). As an initial matter, we note that the term applicable statute of limitations, in practice, can refer to various time periods depending on the claim that the limitations period is applicable to. *Cf.* ***Mills v. Fulmarque, Inc.****,* 360 S.W.3d 362, 369 (Tenn. 2012) ("[C]ourts have consistently characterized 'applicable statute of limitations' to mean the statute of limitations applicable to a plaintiff's claim."). Indeed, the Tennessee General Assembly has chosen to employ various statutes of limitations for different claims, ranging from as short as one year to as long as ten years in some situations. *See, e.g.*, Tenn. Code Ann. § 28-3-104 (providing that actions for injury to the person shall be commenced within one year after the cause of action arises); Tenn. Code Ann. § 28-3-105 (providing that actions for injuries to real property shall be commenced within three years of the accruing of the cause of action); Tenn. Code Ann. § 28-3-109 (providing that actions on contracts not otherwise provided for shall be commenced within six years after the cause of action accrues); Tenn. Code Ann. § 28-3-110 (providing a ten-year statute of limitations on certain actions, including actions on judgments and "[a]ll other cases not expressly provided for").

Here, Appellee insists that "applicable statute of limitations" must refer to the same statute of limitations at all three points the phrase is used in the statute. Under this interpretation, the "applicable statute of limitations" in this case must refer to the one-year statute provided for in the GTLA. To Appellee's credit, it is correct that "[i]n the absence of statutory language indicating that the definition of the phrase differs from one sentence, or subsection, to the next, we decline to assign inconsistent definitions to the same phrase." ***Mills v. Fulmarque, Inc.****,* 360 S.W.3d 362, 369 (Tenn. 2012).

This ignores, however, that the legislature has chosen to modify the three uses of the phrase "applicable statute of limitations" in different ways. Indeed, the first two uses of the phrase are modified by the article "the," while the third use of the phrase is modified by the article "any." Again, in construing statutes, we must consider the grammar employed by the legislature. *See* ***Hawkins***, 165 S.W.3d at 300. In our view, the addition of the adjective "any" typically denotes the use of a plural, while the use of the article "the" denotes a singular. *Compare* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 65 (3d ed. 2011) (stating that while "any" may be either singular or plural, the singular is rare and "really is an elliptical for any one"); ***Webster's New College Dictionary*** 64 (5th ed. 2014) (defining "any" as "one, no matter which, of more than two"), *with Webster's New College Dictionary* at 1501 (defining "the" as, variously, "that (one) being spoken of or already mentioned" or "that (one) which is present" or "referring to that one of a number of persons or things which is identified by a modifier"). Considering only the language of the statute, then, the statute simply does not

foreclose the possibility that the General Assembly intended different definitions to apply to the different uses of the phrase "applicable statute of limitations." Indeed, the plain language utilized by the legislature suggests that while the first two uses of the phrase "applicable statute of limitations" was meant to be limited to only a single statute of limitations, the third use of the phrase encompasses the consideration of additional statutes of limitations. This language therefore directly contradicts Appellee's argument that consideration of only a single statute of limitations, the statute applicable to the comparative tortfeasor, was intended by the legislature.

We are also mindful that we must not determine the meaning of a statute by considering only a few words without considering the statute as a whole. *See Steele v. Indus. Dev. Bd. of the Metro. Gov't of Nashville & Davidson Cty.*, 950 S.W.2d 345, 348 (Tenn. 1997) ("[I]t is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning."). Here, it important to consider the context of each use of the term "applicable statute of limitations." For instance, the first two uses of the term "applicable statute of limitations" occur in the context of the original complaint against the original defendant. *See* Tenn. Code Ann. § 20-1-119(a) (providing that "if a defendant named in an original complaint initiating suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations"). The use of the term "the applicable statute of limitations" in this context therefore generally means the statute of limitations applicable to the "one already mentioned," i.e., the defendant named in an original complaint. Indeed, section 20-1-119(a) does not even refer to the comparative tortfeasor added by this section as a defendant, but rather simply as a "person." *See* Tenn. Code Ann. § 20-1-119(a) (emphasis added).[6] When speaking about the statute of limitations applicable to that newly named person, however, the General Assembly chose to use the phrase "any statute of limitations," a term far less restrictive than previously used to refer to the statute of limitations at issue when the suit is initiated. The drafters of section 20-1-119 therefore draw a distinction between the statute of limitations applicable when the suit is initiated and the more broadly characterized statute of limitations that may be applicable to the comparative tortfeasor. This analysis leads us to believe that the drafters contemplated the possibility that the original complaint and the claim against the comparative tortfeasor could be governed by different statutes of limitations. *See also* Tenn. Code Ann. § 20-1-119(b) (providing that when this statute is applicable, a claim "shall not be barred by **any** statute of limitations") (emphasis added).

Finally, we must consider the statute as a whole in light of its purpose. *See Mann*, 380 S.W.3d at 50 ("We have repeatedly held that section 20-1-119 must be construed liberally to effectuate its remedial purpose."); *see also Moreno v. City of Clarksville*, 479 S.W.3d 795, 806 (Tenn. 2015) ("Section 20-1-119 should not be construed narrowly

---

[6] Tenn. Code Ann. section 20-1-119(f) also provides that in this chapter, "person" means any individual or legal entity.

- 10 -

because it is an integral part of a comparative fault system that is built on the concepts of fairness and efficiency.") (citing *Becker v. Ford Motor Co.*, 431 S.W.3d 588, 592 (Tenn. 2014)); *Grindstaff v. Bowman*, No. E2007-00135-COA-R3-CV, 2008 WL 2219274, at *3 (Tenn. Ct. App. May 29, 2008) (section 20-1-119 must be interpreted in a manner that is consistent with notions of fairness and efficiency). Indeed, the Tennessee Supreme Court has explained that the enactment of section 20-1-119 stemmed from the Legislature's fear that with the advent of the comparative fault system, plaintiffs might be denied recovery from nonparties named as tortfeasors by an original defendant:

> [W]e anticipated that allowing a defendant to shift some or all of the fault to a nonparty would result in a "predicament for some plaintiffs because a defendant could plead the fault of a nonparty after the statute of limitations had run **against that nonparty**, thus preventing the plaintiff from adding the nonparty to the suit." *Browder v. Morris,* 975 S.W.2d 308, 310 (Tenn. 1998). In such situations, "[a]ny fault attributed to the time-barred nonparty would then not be recoverable by the plaintiff." *Id.* **In response to this problem, the General Assembly enacted Tennessee Code Annotated section 20-1-119**.

> *Mann*, 380 S.W. 3d at 47 (emphasis added).

Clearly, the fundamental purpose underpinning Tennessee Code Annotated section 20-1-119 is to prevent the "predicament" now facing that Appellant, who has been denied relief in its action simply because the original defendant opted to name a governmental entity whose applicable statute of limitations has lapsed. Moreover, as previously discussed, the General Assembly amended the statute to expressly apply to GTLA defendants. *See* Tenn. Code Ann. § 20-1-119(g); *see also* **Harper v. Bradley Cty.**, 464 S.W.3d 615, 622 (Tenn. Ct. App. 2014) (citing **Doyle v. Frost**, 49 S.W.3d 853, 860 (Tenn. 2001) ("the legislature's amendment of [20-1-119] supports the proposition that governmental entities should be treated, for purposes of Rule 15.03, like any other party.")).

Bearing in mind the language of the statute, the 1999 amendment, and the statute's remedial purpose, it appears the legislature's intent would be frustrated in many cases were we to adopt the Appellee's interpretation of section 20-1-119. Under this interpretation litigants would be forced to anticipate the addition of a GTLA defendant regardless of the plaintiff's original claim. How plaintiffs can be expected to magically foresee any and all other tortfeasors that the original defendant might name in a future answer is unclear. *Cf.* **Naylor v. Naylor**, No. W2016-00038-COA-R3-CV, 2016 WL 3923790, at *12 (Tenn. Ct. App. July 15, 2016) ("Questions involving reaching far into the future are best left to future judicial determination rather than crystal-ball gazing.") (citation omitted). Such an expectation would amount to an "absurdity" and would in large part render section 20-1-119 ineffective. **Lee Med.**, 312 S.W.3d at 527 (holding that

courts may presume that the General Assembly did not intend an absurdity or a useless statute). Consequently, we cannot with agree with the Appellee's proposed construction of section 20-1-119, and we conclude that the plain language of the statute, as well as its underlying intent, lends support to the Appellant's position in this case.

Appellee's next contention on appeal is that the Appellant's interpretation of the statute is at odds with the holding in *Moreno v. City of Clarksville*, 479 S.W.3d 795 (Tenn. 2015). According to the Appellee, *Moreno* stands for the proposition that "Tenn. Code Ann. § 20-1-119 must be strictly construed." Upon a close reading of *Moreno*, however, we disagree.

In *Moreno*, the plaintiff was injured when a tree that was growing on state property fell onto his car as he drove by. 479 S.W.3d at 798. Within one year of the accident, the plaintiff filed a notice of a claim with the division of claims administration. *Id.* The notice was transferred to the claims commission and eventually the plaintiff received an order from the claims commission directing the plaintiff to file a formal complaint against the state within thirty days. *Id.* By the time the plaintiff filed this formal complaint, however, over a year had passed since the accident. *Id.* Thus, when the state alleged fault on the part of the City of Clarksville and the plaintiff attempted to bring suit against the city, the city argued that the original complaint was not timely. *Id.* at 799. The trial court agreed with the city and dismissed the plaintiff's claim; this Court, however, reversed, finding that a notice of complaint was essentially a complaint for purposes of section 20-1-119. *Id.* at 801.

The Tennessee Supreme Court reversed the Court of Appeals, noting that section 20-1-119 should be read naturally and reasonably, and concluding that a notice of complaint to the division of claims administration is simply not the same as filing an "original complaint" as required in section 20-1-119. *Id.* at 808. Although the court acknowledged that a notice of complaint "shares some characteristics of a complaint[,]" it went on to hold that it was constrained "to construe the language in Section 20-1-119 in a way that is natural, ordinary, and unforced." *Id.*

Based on the foregoing, Appellee asserts that section 20-1-119 must be strictly construed: "the Supreme Court made clear that the words in a statute have consequences, and that courts do not have authority to deviate from the plain language simply because it produces what might be considered an unfair result, or otherwise creates consequences that may not have been fully contemplated by the legislature." In the present case, however, the Appellee is the party conflating the plain language of the statute and mischaracterizing the precedent in a results-oriented fashion.

Indeed, while there is explicit language in *Moreno* affirming the principle that the statute is *not* to be construed narrowly, Appellee states several times in its brief that section 20-1-119 must be strictly construed. *See Moreno*, 479 S.W.3d at 805 ("The purpose of this statute was to provide a plaintiff with a fair opportunity to bring before

the [trial] court all persons who caused or contributed to the [plaintiff's] injuries. . . . Section 20-1-119 should not be construed narrowly because it is an integral part of a comparative fault system that is built on the concepts of fairness and efficiency.") (internal citations omitted). *Moreno* simply does not stand for the proposition that the statute in its entirety requires strict construction; rather, the *Moreno* court merely provided guidance on what constitutes an "original complaint" for purposes of the statute.

Further, the Appellee analogizes *Moreno* to the case at hand in a misleading manner, arguing that "[*Moreno*] was predicated on the notion that the only way the City might be added as a party under Tenn. Code Ann. § 20-1-119 was a ruling that a 'complaint' had been filed *within the time frame of the GTLA statute applicable to the City*." (emphasis in original). Appellee goes on to state that "[a]t no point did the [*Moreno*] Court (or even the litigants for that matter) ever posit that the 'applicable statute of limitations' somehow referred to the statute applicable to the initial claim filed against the state." This argument from the Appellee, however, ignores a fundamental fact from *Moreno*: both the original defendant and the comparative tortfeasor were subject to a one-year statute of limitations. *See Moreno*, 479 S.W.3d at 802 (stating that "personal injury claims against the State filed with the Claims Commission are subject to a one-year statute of limitations" under Tenn. Code Ann. § 9-8-402, while the claim against the City was subject to the one-year statute of limitations under the GTLA). Because the statute of limitations was the same length for either claim, the *Moreno* Court never expressly stated whether the statute of limitations applicable to the claims commission or applicable under the GTLA was relevant for purposes of determining whether the section 20-1-119(a) grace period had been triggered.[7] Indeed, the issue in *Moreno* was not the timing of the action that initiated the case, but whether a timely filed notice in the claims commission constitutes an initiating complaint for purposes of section 20-1-119(a). *Moreno*, 479 S.W.3d at 804.[8] To draw a conclusion from *Moreno* that only the statute of limitations applicable to the comparative tortfeasor is relevant for purposes of section 20-1-119(a) is to ignore the particular facts and holding at issue in that case.

Other case law from our supreme court supports our conclusion that the timeliness of the complaint for purposes of triggering the ninety-day grace period to add a comparative tortfeasor is not governed by the statute of limitations applicable to the new party. In *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362 (Tenn. 2012), the Tennessee Supreme Court rejected the plaintiff's contention that the term "applicable statute of

---

[7] Instead, only once it was determined that the terms of section 20-1-119(a) were not met, thereby preventing the plaintiff from relying on the grace period outlined therein, the claim against the city was dismissed for failure to be initiated within the statute of limitations applicable to the city. *See Moreno*, 479 S.W.3d at 814 (holding that because the plaintiff was unable to establish an exception to the GTLA statute of limitations, his claim was time-barred).

[8] Indeed, had the *Moreno* Court concluded that the notice constituted a complaint under section 20-1-119(a), there can be no dispute that the 90-day grace period under section 20-1-119(a) would be triggered because this purported complaint was filed within both the statute of limitations applicable to the Claims Commission and the GTLA. The situation therefore is simply not analogous to the case-at bar.

limitations" included the ninety-day grace period allowed by section 20-1-119(a). *Id.* at 371. In reaching this result, the court opined that "[s]ince the ninety-day period never becomes relevant until a responsive pleading alleging fault against a nonparty is filed, the 'applicable statute of limitations' relevant to 'an original complaint initiating a suit' will never include the ninety-day period." *Id.* at 369. The same is true of the statute of limitations applicable to the comparative tortfeasor: it never becomes relevant until a responsive pleading alleging the fault of a nonparty is filed. As such, following the reasoning in *Mills*, the "applicable statute of limitations" referred to with regard to the timeliness of the original complaint "will never include" the statute of limitations applicable to the comparative tortfeasor. *Id.* Moreover, the *Mills* Court makes clear that "the ninety-day period provided in section 20-1-119 is available to a plaintiff only when a defendant sued within the statute of limitations applicable to the plaintiff's underlying cause of action" raises an issue of comparative fault in its answer. *Id.* The underlying cause of action here is the original action for property damages against Brass-Craft, which is undisputedly subject to a three-year statute of limitations. *See* Tenn. Code Ann. § 28-3-105.

Based on the foregoing, we remain unconvinced by the Appellee that section 20-1-119 should not grant Appellant a ninety-day grace period to name MLGW as a comparative tortfeasor in this case. Both the plain language of the statute and the supporting case law indicate that the statute of limitations relevant to determine the timeliness of an original complaint for purposes of triggering the ninety-day grace period is the statute of limitations applicable to the original defendant/claim. *See generally id.*; *Queen's Tree Surgery*, 2003 WL 22768689, at *3. Like the court in *Queen's Tree Surgery*, we cannot conclude that such a holding impermissibly expands the GTLA. Indeed, as previously discussed, section 20-1-119 was originally interpreted as not applicable to GTLA defendants. *See Doyle v. Frost*, 49 S.W.3d 853, 860 (Tenn. 2001) (citing *Daniel v. Hardin Cty. Gen. Hosp.*, 971 S.W.2d 21, 24 (Tenn. Ct. App. 1997)) (noting that the court in *Daniel* held that section 20-1-119 did not apply to cases brought under the GTLA).

Although the legislature was under no obligation to act, it voluntarily chose to amend section 20-1-119 to make clear that the comparative fault apparatus contained therein applies to governmental entities. *Id.* (noting in the wake of *Daniel*, the General Assembly amended section 20-1-119 to expressly provide that it is applicable to governmental entities). In deciding to amend the statute to include governmental entities, the General Assembly was well aware that many claims are governed by statute of limitations longer than the one-year GTLA statute of limitations. *See Lee Med.*, 312 S.W.3d at 527 ("the courts may presume that the General Assembly knows the 'state of the law' . . . in addition the courts may presume that the General Assembly is aware of its own prior enactments . . . [we] may likewise presume that that the General Assembly is aware of the manner in which the courts have construed the statute it has enacted.") (citations omitted). Pursuant to the statute's own language, utilization of the ninety-day

- 14 -

grace period simply does not "shorten nor lengthen the applicable statute of limitations for **any** cause of action, other than as provided in subsection (a)." Tenn. Code Ann. § 20-1-119(c) (emphasis added). To now hold that governmental entities are protected from the provisions of section 20-1-119 whenever the original claim is governed by a longer statute of limitations than a claim under the GTLA would frustrate the general purpose of section 20-1-119 and the legislature's specific amendment to bring GTLA defendants within its scope. *See generally* **Mann**, 380 S.W.3d at 50 (discussing the purpose of section 20-1-119); *see also* **State v. Netto**, 486 S.W.2d 725, 729 (Tenn. 1972) ("The statute should be given a construction that will not render its terms useless."). Otherwise, plaintiffs are required to foresee the naming of a governmental entity as a comparative tortfeasor and file their complaints accordingly, an interpretation of section 20-1-119 that borders on the absurd. *See* **Lee Med.**, 312 S.W.3d at 527.

Instead, we conclude that a plain and ordinary reading of section 20-1-119 requires that the original complaint be filed within the statute of limitations applicable to the original claim in order to trigger the ninety-day grace period afforded by the statute. Here, plaintiff's property damage claim was appropriately filed within the three-year statute of limitations applicable to those types of claims against private defendants. The original defendant thereafter filed an answer raising the comparative fault of MLGW. As such, Appellant was afforded a ninety-day grace period in which to file an amended complaint naming MLGW pursuant to section 20-1-119(a). This procedure was followed in this case. The trial court therefore erred in dismissing the claim against MLGW.

## Conclusion

The order of the Circuit Court of Shelby County granting Memphis Light, Gas and Water's motion to dismiss for failure to state a claim is reversed, and this cause remanded for proceedings consistent with this Opinion. Costs of this appeal are taxed to MLGW.

_____
J. STEVEN STAFFORD, JUDGE