IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 20, 2024 Session

## JOHN S. McMURTRIE, ET AL. v. RANSFORD SARFO, ET AL.

**Appeal from the Circuit Court for Blount County
No. L-20998     David Reed Duggan, Judge**

_____

### No. E2023-01825-COA-R3-CV (c)[1]

_____

This is a consolidated appeal from the trial court's denial of Tennessee Public Participation Act ("TPPA") petitions filed by each of the named defendants in the underlying defamation lawsuit.  Upon review, we affirm the trial court's judgment as to each defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Joseph Edwin Costner, Maryville, Tennessee, for the appellant, Ransford Sarfo.

Richard Lampton Hollow, Knoxville, Tennessee, for the appellant, Adams Publishing Group, LLC d/b/a The Daily Times.

Richard Everett Collins, II, Knoxville, Tennessee, for the appellee, John S. McMurtrie.

## OPINION

### I.     BACKGROUND

Plaintiff-Appellee John McMurtrie ("Plaintiff") was formerly employed as the Director of Safety and Security for Maryville College, a private liberal arts college.  The parties agree that the college is not a part of any government or governmental agency.

_____

[1] There are two appeals from the same underlying trial court case.  By order entered January 29, 2024, we consolidated the record in the first-filed appeal, case number E2023-00911-COA-R3-CV, with the record in the instant appeal.

Plaintiff's job was to oversee campus security and supervise the college's five security guards who worked in rotating shifts. Plaintiff is a former Pennsylvania state trooper and former FBI agent, but he had retired from those jobs before accepting the position at Maryville College in 2018. Neither Plaintiff nor the other security guards who worked under him were sworn law enforcement officers. They were not deputized officers of any city or county. They did not carry weapons and had no authority to seize or arrest anyone. They would call the Maryville Police Department for issues needing law enforcement. The college's streets are generally open to the public.

On July 9, 2021, Defendant-Appellant Ransford Sarfo, a 2010 graduate of Maryville College who lives out-of-state, was visiting campus in a rented Toyota Prius. As Plaintiff approached a sharp turn in front of Carnegie Hall on Circle Drive, he observed the Prius stopped in the middle of the roadway with its four-way emergency flashers activated. It was steadily raining and dark due to storm clouds overhead, and Plaintiff believed the car posed a hazard due to its position in the roadway and the low visibility. Plaintiff then observed an arm emerge from the driver's side window as if to wave him to go around, at which point Plaintiff pulled his vehicle around and stopped beside Sarfo's Prius, on the driver's side. Sarfo glanced at Plaintiff. Plaintiff lowered his passenger side front window to speak with Sarfo, who did not engage with him. Plaintiff then tapped his horn. Sarfo then lowered his own driver's side window. Still seated in his vehicle, Plaintiff asked Sarfo "why are you parked in my driveway?" Plaintiff maintains that he meant this as a joke. Sarfo replied that he had stopped for a photograph because he used to live in Carnegie Hall and that, as an alum, he had a right to be there. Sarfo also advised Plaintiff that he was having trouble shifting the rented Prius out of park. Plaintiff told Sarfo that he still needed to move his car out of the middle of the road and could continue taking photographs from one of the several open parking spaces in front of Carnegie Hall. Sarfo asked Plaintiff to identify himself, so Plaintiff told him his name and title of Director of Safety and Security. Sarfo, uncomfortable and offended, advised Plaintiff that this would not be the end of the matter. Plaintiff then drove away. He observed Sarfo drive away, too. The entire interaction between the two men lasted approximately one minute. There is no evidence in the record to suggest that Plaintiff knew Sarfo was a person of color when he first approached him about the improperly parked car.

The next day, Sarfo wrote an email about his interaction with Plaintiff to Maryville College's President, Bryan Coker, and six other college officials. The subject line was "MC Alumni harassed on campus." The email stated, in part:

> I was deeply troubled that [Plaintiff] did not ask why my hazard lights were on, but assumed that I did not belong on the campus. In my years at the College, I never heard a staff member refer to any part of the campus as their property to justify their reasoning for another person to leave. It is very

disheartening that I came back to a place I call home and was told by a staff member that I was on their property and asked to leave. I AM HURT! I will be reaching out to every alumni committee that I know to share my experience yesterday. Dr. Gerald Gibson would be deeply troubled to hear that we have staff members who do not understand the true meaning of community. I felt bullied, unwelcomed, and mistreated on the very college campus that I lived for 4 years. This is not the Maryville College that I knew in 2010.

Sarfo's email signature included a work photo of himself. Then, Plaintiff received a letter from the college outlining Sarfo's complaints against him. On July 24, 2021, Sarfo contacted Maryville's local newspaper, *The Daily Times*, which is owned by Defendant-Appellant Adams Publishing Group, LLC ("the newspaper") about the encounter with Plaintiff. On July 26, 2021, Plaintiff met with the college's Human Resources Director. On July 29, 2021, Plaintiff, at the direction of Maryville College, had a Zoom meeting with the Human Resources Director and received a verbal warning for unprofessional conduct. At some point in the disciplinary process, Maryville College concluded that there was no racial animus between Plaintiff and Sarfo, but the college directed Plaintiff to attend two virtual training sessions: "Diversity and Inclusion in the Workplace – Unconscious Bias Awareness" and "Customer Service Excellence for Team Members." In the July 29 Zoom meeting, the college's officials told Plaintiff that President Coker was planning to respond to *The Daily Times'* request for comment.

On Sunday August 8, 2021, *The Daily Times* ran a front-page article with the headline, "'Must do better' Coker: MC needs to improve its inclusivity." The article began, "An incident last month in which a White security officer questioned a Black alumnus on the Maryville College campus has President Bryan Coker saying the school 'can – and must – do better, when it comes to creating and maintaining a welcoming, supportive, and inclusive environment for all.'" The article described the July 9, 2021 interaction between Sarfo and Plaintiff from Sarfo's point of view, which characterized it as an interrogation and "just horrible." The story also included Sarfo's accounts of racism he encountered on campus sixteen years earlier when he was a student there. Two days later, on August 10, Maryville College terminated Plaintiff's employment. On August 11, local news station WBIR reported *The Daily Times'* story through a video posted on WBIR's website in which the news anchor related that Maryville College was "searching for a new director of campus safety and campus security. The school fired the former director, John McMurtrie, after an investigation into a discriminations [sic] case." On August 12, 2021, *The Daily Times* published another front-page article with a photo of Plaintiff and the headline, "Security director no longer with MC." In the second article, Sarfo was quoted saying that he was dissatisfied with how the college handled the situation and what he hoped the college would do going forward. The article stated that the college confirmed that Plaintiff

was no longer employed there but declined to comment further. On August 13, WBIR posted on its website a more detailed article with the headline, "Maryville College leaders apologize after an alumnus says he was racially profiled."

As relevant to this appeal, on July 7, 2022, Plaintiff filed a lawsuit alleging defamation against the newspaper and Sarfo.[2] He alleged that, through emails and other writings, Sarfo knowingly published to Maryville College, its alumni, and *The Daily Times* "false and defamatory statements of racial profiling and harassment by [Plaintiff]." He further alleged that the newspaper published Sarfo's defamatory statements and accusations of racial profiling and harassment without attempting to ascertain their truth, omitted relevant facts, and implied that Plaintiff was part of institutional racism at Maryville College.

On September 16, 2022, the newspaper petitioned the trial court to dismiss the action pursuant to the Tennessee Public Participation Act, Tennessee Code Annotated sections 20-17-101 through 110.[3] Referencing the statute's requirements, the newspaper asserted that Plaintiff's lawsuit against the newspaper resulted from a communication and "is based on or relates to or is in response to its exercise of the right of free speech" and involves "a matter of public concern." *See* Tenn. Code Ann. § 20-17-103(3). The newspaper argued that because Plaintiff identified himself in the complaint as Maryville College's former Director of Safety and Security, "he is, therefore, a police officer [and] a police officer . . . is, as a matter of law, a public official." The newspaper contended that Plaintiff "engaged in a course of conduct with [Sarfo] in July of 2021 which resulted in extensive public attention being brought on the incident as well as its participants," so Plaintiff is also a public figure for purposes of the TPPA petition. Finally, the newspaper asserted the fair report privilege as a defense, explaining that the news articles Plaintiff complained of are not actionable because they "simply report actions taken by the administration of Maryville College following the complaint made by Mr. Sarfo accompanied by quotes from the statements of Maryville College administrative officials." In support of its TPPA petition, the newspaper filed *The Daily Times* reporter Amy Beth Miller's declaration which was made under penalty of perjury.[4] Ms. Miller prepared the news articles at issue in this litigation. Among other things, Ms. Miller stated that the

---

[2] Plaintiff's complaint also alleged against Sarfo intentional interference with an employment relationship. Plaintiff's wife asserted a claim for loss of consortium against Sarfo and against the newspaper. These causes of action are not at issue in this appeal.

[3] The filing of a TPPA petition immediately stays discovery in the pending lawsuit until the court has ruled on the petition. Tenn. Code Ann. § 20-17-104(d).

[4] "The court may base its decision on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties." Tenn. Code Ann. § 20-17-105(d).

description of the encounter between Sarfo and Plaintiff is based on Sarfo's account "and those statements are attributed to him." She further declared, "I did not at any time from my first involvement with this sequence of events to the present have a high degree of awareness of probable falsity with regard to any information which was prepared for publication regarding [Plaintiff]. There was no knowledge of falsehood because there was no falsehood."

Sarfo filed a TPPA petition on October 13, 2022 in which he asserted that Plaintiff's lawsuit against him must be dismissed under section 20-17-105 because Sarfo "met his burden of making a prima facie case that the legal action against him is based on or relates to or is in response to his exercise of [the] right of free speech and/or [the] right to petition."[5] In his petition, Sarfo adopted the newspaper's argument that because Plaintiff identified himself in the complaint as Maryville College's former Director of Safety and Security, "he is, therefore, a police officer [and] a police officer . . . is, as a matter of law, a public official." Sarfo further argued that Plaintiff is also a public figure because he "engaged in a course of conduct with [Sarfo] in July of 2021 which resulted in extensive public attention being brought on the incident as well as its participants."

Plaintiff opposed each defendant's TPPA petition, arguing that neither Sarfo nor the newspaper could satisfy their burdens under the TPPA because the legal action he had filed against them did not involve First Amendment speech and because he is neither a public official nor a public figure. Plaintiff emphasized that the publications in question involved a private dispute, between private individuals, on private property, and that the publications were not about a matter of public concern. Following a December 6, 2022 hearing and by order entered May 25, 2023, the trial court denied Sarfo's petition. The court reserved ruling on the newspaper's petition.

In its supplemental brief filed December 28, 2022, the newspaper again asserted that its publications were subject to the fair report privilege. By order entered December 4, 2023, the trial court found that the newspaper's petition was not well taken because "Plaintiff is not a public official or public figure, and [] he did not insert himself into a public controversy" so as to warrant application of the TPPA. Accordingly, the trial court

---

[5] Sarfo did not pursue his "exercise of the right to petition" argument any further, probably because it is inapplicable to this action which does not involve any governmental body. *See* Tenn. Code Ann. § 20-17-103(4) (defining "Exercise of the right to petition" as "a communication that falls within the protection of the United States Constitution or the Tennessee Constitution and: (A) Is intended to encourage consideration or review of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body; or (B) Is intended to enlist public participation in an effort to effect consideration of an issue by a federal, state, or local legislative, executive, judicial, or other governmental body[.]").

denied the newspaper's petition to dismiss the action under the TPPA. Sarfo and the newspaper each appealed the trial court's interlocutory rulings, as the TPPA allows.[6]

## II.    ISSUES

We restate the issues on appeal as follows: (A) whether the trial court erred in denying Sarfo's petition to dismiss filed pursuant to the TPPA, and (B) whether the trial court erred in denying the newspaper's petition to dismiss filed pursuant to the TPPA.

## III.    STANDARD OF REVIEW

We review a trial court's decision to grant or deny a TPPA petition under a de novo standard of review. *See Doe v. Roe*, 638 S.W.3d 614, 617 (Tenn. Ct. App. 2021); *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 657 (Tenn. Ct. App. 2021). The TPPA requires a petitioner to make "a prima facie case" that the statute applies. *See* Tenn. Code Ann. § 20-17-105(a). "Whether a party has made a prima facie case is a question of law." *Goldberger v. Scott*, No. M2022-01772-COA-R3-CV, 2024 WL 3339314, at *3 (Tenn. Ct. App. July 9, 2024). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc*., 8 S.W.3d 625, 628 (Tenn. 1999). "Moreover, when an issue on appeal requires statutory interpretation, we review the trial court's decision de novo with no presumption of correctness." *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018).

## IV.    DISCUSSION

### A. & B.

The TPPA's stated purpose is "to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102. We must construe the TPPA "broadly to effectuate its purposes and intent." *Id*. The TPPA is an "anti-SLAPP" statute, *i.e.*, it was enacted to protect individuals from "strategic lawsuits against public participation." *See Nandigam Neurology, PLC*, 639 S.W.3d at 657.

---

[6] "The court's order dismissing or refusing to dismiss a legal action pursuant to a petition filed under this chapter is immediately appealable as a matter of right to the court of appeals." Tenn. Code Ann. § 20-17-106.

The TPPA provides, in relevant part, that "[i]f a legal action is filed in response to a party's exercise of the right of free speech . . . that party may petition the court to dismiss the legal action." Tenn. Code Ann. § 20-17-104(a). The exercise of the right of free speech is defined as "a communication made in connection with a matter of public concern . . . that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(3). Here, each petitioning party, Sarfo and the newspaper, asked the trial court to dismiss Plaintiff's defamation action because Plaintiff filed it in response to their exercise of the right to free speech. As such, each petitioning party had the initial burden of "making a prima facie case that [the] legal action . . . is based on, relates to, or is in response to that party's exercise of the right to free speech[.]" Tenn. Code Ann. § 20-17-105(a). If the petitioning party meets this initial burden, then "the court shall dismiss the legal action unless the responding party establishes a prima facie case for each essential element of the claim in the legal action." Tenn. Code Ann. § 20-17-105(b). Additionally, "Notwithstanding subsection (b), the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c).

The defendants filed nearly identical petitions.[7] As the petitioners, Sarfo and the newspaper each had the initial burden to make a prima facie case that Plaintiff's defamation complaint was based on, related to, or filed in response to his or its "communication made in connection with a matter of public concern . . . that falls within the protection of the United States Constitution or the Tennessee Constitution." *See* Tenn. Code Ann. §§ 20-17-103(3); 20-17-105(a). Recently, the Tennessee Supreme Court instructed:

> To establish a "prima facie" case under the TPPA, a party must present enough evidence to allow the jury to rule in his favor on that issue. This evidence may include "sworn affidavits stating admissible evidence" and "other admissible evidence." Tenn. Code Ann. § 20-17-105(d). As is the case when a court rules on a motion for summary judgment or motion for directed verdict, the court should view the evidence in the light most favorable to the party seeking to establish the prima facie case and disregard countervailing evidence.

*Charles v. McQueen*, --- S.W.3d ---, No. M2021-00878-SC-R11-CV, 2024 WL 3286527, at *13 (Tenn. July 3, 2024) (citations omitted). As this Court noted, "[t]he TPPA does not define 'matter of public concern' so much as provide a list of examples." *Goldberger*, 2024 WL 3339314, at *4. Specifically,

---

[7] Sarfo's petition states that he "essentially adopts verbatim *The Daily Times'* Law and Argument."

"Matter of public concern" includes an issue related to:

(A) Health or safety;
(B) Environmental, economic, or community well-being;
(C) The government;
(D) A public official or public figure;
(E) A good, product, or service in the marketplace;
(F) A literary, musical, artistic, political, theatrical, or audiovisual work; or
(G) Any other matter deemed by a court to involve a matter of public concern[.]

Tenn. Code Ann. § 20-17-103(6). Both TPPA petitions focus on subsection (D) of section 20-17-103(6). First, Sarfo and the newspaper cite the allegations of Plaintiff's complaint in which Plaintiff identified himself as the former Maryville College Director of Safety and Security as evidence that Plaintiff is "a police officer" and therefore a public official. Citing *Press v. Verran*, Sarfo and the newspaper also imply—but do not point to any evidence—that Plaintiff appears to the public to have substantial responsibility for or control over the conduct of governmental affairs. *See Press, Inc. v. Verran*, 569 S.W.2d 435, 438 (Tenn. 1978) (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966)) ("[T]he "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."). Respectfully, these arguments are undeveloped and unavailing. Again, the parties agree that Maryville College is a private college and is not part of any government or governmental agency.[8] Plaintiff's past employment as a law enforcement professional in another state is irrelevant to the job he held at Maryville College which was to oversee campus security and supervise the college's five security guards. The record contains no evidence that Plaintiff was a sworn law enforcement officer on July 9, 2021 or at any point during his employment with the college. Nothing in the record could suggest that Plaintiff controlled the conduct of governmental affairs at any time relevant to this case. In his role as a security guard, Plaintiff was not a deputized officer of any city or county, did not carry weapons, and had no authority to seize or arrest anyone. Under these circumstances, we hold that Plaintiff is not a public official.

Second, Sarfo and the newspaper argue in their petitions that Plaintiff "is also a public figure by virtue of having injected himself into a public controversy and a matter of public or general concern through his own purposeful or deliberate actions," without identifying what these purported actions were. They imply that Plaintiff is a public figure

---

[8] We are unpersuaded by the newspaper's passing suggestion that Maryville College should be deemed the "functional equivalent of any state institution" because it is "a high-quality educational institution with significant rankings on a national scale."

because the approximately one-minute interaction between Sarfo and Plaintiff on July 9, 2021, on the college's private property "resulted in extensive public attention being brought on the incident as well as its participants." We disagree for the reasons below.

"The first step in determining if a plaintiff is a public figure is to discern whether there is a public controversy." *Hibdon v. Grabowski*, 195 S.W.3d 48, 59 (Tenn. Ct. App. 2005). Our Supreme Court describes it as follows:

> A public controversy is a "real dispute" whose outcome "affects the general public or some segment of it in an appreciable way." [*Waldbaum v. Fairchild Publications, Inc*., 627 F.2d 1287, 1296 (D.C. Cir. 1980)]. The mere fact that a dispute is newsworthy does not necessarily mean it is a public controversy. *Id*. "Rather, a public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants." *Id*. "If the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy." *Id*. at 1297.

*Charles v. McQueen*, --- S.W.3d ---, 2024 WL 3286527, at *7. Here, two private individuals interacted for about one minute while seated in their respective vehicles during dark, rainy weather. The interaction involved one of them brusquely telling the other to move his car to a parking spot instead of blocking the roadway on private property. Simply put, Sarfo has not explained *how* there could be a public controversy under relevant caselaw, that is, how his dispute with Plaintiff affects the public in some appreciable way or why the outcome would be felt by anyone outside of the dispute. Likewise, the newspaper has not presented enough evidence for a jury to rule in its favor on the issue of whether there is a public controversy. Upon review, we find that no dispute existed as a public concern prior to Sarfo's alleged defamatory comments and prior to the news articles identified in the complaint. *See Hibdon*, 195 S.W.3d at 60 ("In determining whether there is a public controversy, it is vital to ascertain whether the dispute existed as a public concern prior to the alleged defamatory comments."). There exists no public controversy that gave rise to the statements by Sarfo or to the articles by the newspaper that form the basis of Plaintiff's defamation claim.

"Once a court has defined the relevant public controversy, the next step is to determine whether the plaintiff is a public figure for purposes of that controversy." *Charles v. McQueen*, --- S.W.3d ---, 2024 WL 3286527, at *8. Given our determination that there is no public controversy, Plaintiff cannot be deemed to be a limited-purpose public figure in relation to the news articles published about him. Assuming *arguendo* that there is a public controversy here, we disagree with Sarfo's and the newspaper's contention that Plaintiff injected himself into it, *i.e.*, that Plaintiff is a limited-purpose public figure.

"Limited-purpose public figures include those who have voluntarily 'thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.'" *Id*. at *7 (citing *Verran*, 569 S.W.2d at 439). At this stage of the litigation, the record is clear that Plaintiff did the opposite of participate in a controversy: he stayed silent and did not attempt to publicly rebut Sarfo's account or the newspaper's reporting of the events. *See Verran*, 569 S.W.2d 435, 441 (explaining that when determining whether someone is a public figure, the "critical concern must be the nature and extent of the individual's participation in the particular controversy."). Sarfo and the newspaper have not identified any evidence upon which we could conclude otherwise.

With the foregoing considerations in mind, we hold that Sarfo and the newspaper did not establish a prima facie case by showing that Plaintiff filed the underlying lawsuit against each of them in response to the exercise of the right of free speech in relation to a matter of public concern. Because Sarfo did not make a prima facie case that his communications fell within the scope of the TPPA, we affirm the trial court's May 25, 2023 order denying Sarfo's petition to dismiss the complaint pursuant to the TPPA.

Our analysis of the newspaper's TPPA petition does not end here because before the order denying the newspaper's petition was entered, the newspaper twice asserted as a defense that its publications were subject to the fair report privilege. The newspaper stated that this defense barred Plaintiff's claims against it. The trial court's order on the newspaper's TPPA petition reads in its entirety:

> Upon consideration of the Petition filed by [the newspaper], pursuant to the [TPPA], the argument of counsel, the Supplemental Brief of [the newspaper], the responses filed by the Plaintiffs and the record as a whole,
>
> IT IS HEREBY ORDERED that the Petition of *The Daily Times* is not well taken and should be denied, the Court finding that Plaintiff is not a public official or a public figure, and that he did not insert himself into a public controversy.

The trial court's order does not consider whether the newspaper established a valid defense to Plaintiff's claims. Tennessee Code Annotated section 20-17-105(c) specifically instructs that "[n]otwithstanding [whether the petitioning party and the responding party meet their respective burdens under subsection (b)], the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims in the legal action." Tenn. Code Ann. § 20-17-105(c). We generally decline to speculate as to a trial court's rationale when we cannot discern the basis for its decision. *See, e.g.*, *Buckingham v. Tennessee Dep't of Corr.*, No. E2020-01541-COA-R3-CV, 2021 WL 2156445, at *3 (Tenn. Ct. App. May 27, 2021); *Lugo v. Lugo*, No. W2020-00312-COA-R3-CV, 2021 WL 507889, at *5

(Tenn. Ct. App. Feb. 10, 2021); *see also* Tenn. R. Civ. P. 52.01. Nevertheless, in the interest of judicial economy and forward progress at this early stage of the litigation, we exercise our discretion to address this issue.

"[T]he fair report privilege is an exception to the common law rule 'that a person who repeats the defamatory statements made by another is also liable for defamation.'" *Burke v. Sparta Newspapers, Inc*., 592 S.W.3d 116, 120–21 (Tenn. 2019) (quoting *Funk v. Scripps Media, Inc*., 570 S.W.3d 205, 211 (Tenn. 2019)). In *Burke*, our Supreme Court held that the fair report privilege is limited to only public proceedings or official actions of government that have been made public. *Id*. at 123–24. The fair report privilege does not apply to the facts of this case because there was neither a public proceeding nor an official action of the government that had been made public. Because the newspaper did not make a prima facie case that its communications fell within the scope of the TPPA and because it did not establish a valid defense to the claims in the legal action, we affirm the trial court's December 4, 2023 order denying the newspaper's petition to dismiss the complaint pursuant to the TPPA.

## V.    CONCLUSION

We affirm the trial court's May 25, 2023 judgment. We affirm the trial court's December 4, 2023 judgment. We remand for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed one-half to the appellant, Ransford Sarfo, and one-half to the appellant Adams Publishing Group, LLC d/b/a The Daily Times.

_____
JOHN W. McCLARTY, JUDGE

- 11 -