IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 10, 2024 Session

## MICHAEL FRISBEY ET AL. v. SALEM POINTE CAPITAL, LLC ET AL.

**Appeal from the Chancery Court for Monroe County**
**No. 21,579     Jerri Bryant, Chancellor**

_____

### No. E2023-01233-COA-R3-CV
_____

The company holding developer's rights to a subdivision and the company's principal member used the developer's rights to unilaterally remove a board member from the board of the subdivision's homeowners' association. The aggrieved board member and his wife filed suit, asking for an injunction allowing the plaintiff to remain a board member. The trial court granted the plaintiff's request for a temporary injunction and later held that the defendant company lacked the authority to remove the plaintiff as a board member. The trial court reasoned that the bylaw on which the company relied in removing the board member was contrary to state law and improper. Defendants appealed to this Court. We reverse in part and affirm in part, affirming the trial court's ultimate ruling that the plaintiff is entitled to his seat on the homeowners' association board.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in part; Affirmed in part; Case remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Thomas M. Hale, Brandon L. Morrow, and Adam G. Russell, Knoxville, Tennessee, for the appellants, Michael Ayres and Salem Pointe Capital, LLC.

Melanie E. Davis and Joel P. Reeves, Maryville, Tennessee, for the appellees, Michael Frisbey and Jamie Frisbey.

### OPINION

#### BACKGROUND

This appeal stems from a homeowners' association board membership dispute. Rarity Bay is a large subdivision located in Monroe County and Loudon County. Rarity

Bay Community Association, Inc. (the "HOA") is a nonprofit corporation operating as the subdivision's homeowners' association. The HOA formed in 1998 and executed its charter (the "Charter") on September 24, 1998. The original bylaws (the "Bylaws") were adopted on September 28, 1998.[1] The Master Declaration of Covenants, Conditions, and Restrictions was registered in Loudon County on October 14, 1998. Membership in the HOA is mandatory for Rarity Bay residents.

Salem Pointe Capital, LLC ("Salem"), principally controlled by Michael Ayres and his wife, became involved with Rarity Bay in early 2015 when Salem acquired several assets associated with the subdivision from a court-appointed receiver (the "Receiver"). Salem purchased, *inter alia*, the subdivision's golf course, country club, some residential units, and vacant land. The United States District Court for the Eastern District of Tennessee approved the sale as part of the receivership. Salem also purchased the "Declarant's rights" to the subdivision. On May 18, 2015, the Receiver executed a document titled "Fifth Amendment of Master Declaration of Covenants, Conditions, and Restrictions for Rarity Bay Amendment of Bylaws for Rarity Bay Community Association, Inc., and Assignment of Declarant's Rights Under Master Declaration" (the "Fifth Amendment"). Declarant's rights originally belonged to the subdivision's developer, and the Bylaws defined "Declarant" as "Tellico Lake Properties, L.P., a Tennessee limited partnership, or any successors, successor-in-title, or assigns." In the Fifth Amendment, however, the Receiver transferred the Declarant's rights to Salem. Specifically, the Receiver "set over, assign[ed], and transfer[red] the Declarant Rights to [Salem], without representations, warranties, or recourse of any kind."

Then, also on May 18, 2015, Salem executed the "Sixth Amendment of Master Declaration of Covenants, Conditions, and Restrictions for Rarity Bay" (the "Sixth Amendment"). In relevant part, the Sixth Amendment provides:

> WHEREAS, Section 1.12 of the Master Declaration, as amended, and Section 2.10 of the Bylaws, as amended, define Declarant as Salem Pointe Capital, LLC, a Tennessee limited liability company; and

> WHEREAS, Section 13.2 of the Master Declaration, as amended, and Section 13.10(a) of the Bylaws, as amended, provide that until the end of the Development Period (as that term is defined in the Master Declaration and the Bylaws, respectively), the Declarant may unilaterally amend the Master Declaration and the Bylaws for any purpose; and

---

[1] The parties and trial court hyphenate "by-laws" throughout the record, which corresponds with many of the pertinent documents in this particular case. Consistent with the Tennessee Nonprofit Corporation Act, Tennessee Code Annotated section 48-51-101 et seq., however, we do not.

WHEREAS, the end of the Development Period has not yet occurred; and

WHEREAS, the Declarant wishes to amend the Master Declaration and the Bylaws as set forth herein below.

The Sixth Amendment also contains the following, as pertinent:

2.(b)   The first paragraph of Section 8.5 is hereby deleted and the following text is inserted in lieu thereof:

Removal of Directors and Vacancies. Any director may be removed, with or without cause, by Members holding a Majority of the total votes in the Association, or by the Declarant. Any director whose removal is sought shall be given notice prior to any meeting called for that purpose. Upon removal of a director, a successor shall be elected by the Members to fill the vacancy for the remainder of the term of such director, which successor must also be approved by the Declarant.

The above amendment to the Bylaws effectively gave Salem final say over HOA's board membership, which is the crux of the present dispute.  Also relevant to this appeal is section 13.10 of the original Bylaws, which deals with amendments to the Bylaws and provides:

13.10. Amendment.

(a) By Declarant. Until termination of the Development Period, the Declarant may unilaterally amend these By-Laws for any purpose.[2] Thereafter, the Declarant may unilaterally amend these By-Laws at any time and from time to time if such amendment is necessary (i) to bring any provision into compliance with any applicable governmental statu[t]e, rule, regulation, or judicial determination; (ii) to enable any reputable title insurance company to issue title insurance coverage on the Units; (iii) to enable any institutional or governmental lender, purchaser, insurer or guarantor of Mortgage loans, including, for example, the Federal National Mortgage Association or Federal Home Loan Mortgage Corporation, to make, purchase, insure or guarantee Mortgage loans on the Units; or (iv) to satisfy the requirements of any local, state, or federal governmental agency. However, any such amendment shall not adversely affect the title to any Unit unless the Member shall consent thereto in writing.

---

[2] It is undisputed that the "Development Period" as defined in the Bylaws is ongoing.

Plaintiffs Michael Frisbey and Jamie Frisbey (together, the "Frisbeys," or "Appellees") are Rarity Bay residents. At an HOA board meeting in February of 2022, several board members were elected. The newly-elected members included Mr. Frisbey. Mr. Ayres ran for but was not elected to the HOA board. After this election, Mr. Ayres, on Salem's behalf, sent an email to the board on February 24, 2022. This email reiterated Salem's right, under the amended Bylaws, to remove with or without cause any board members. The email also states, "please consider this correspondence from [Salem] as official 'notice' of the special called meeting for the pending removal of one and/or more Members from the" HOA board.

At the special-called meeting on March 1, 2022, Mr. Ayres announced that Salem, as Declarant, was exercising its right under the amended Bylaws to remove Mr. Frisbey and another individual[3] as board members. The Frisbeys allege in their complaint that the other board members initially objected to Salem's actions but eventually capitulated in the face of threatened legal action. Thus, Salem removed Mr. Frisbey as a board member.

The Frisbeys filed their complaint against Salem and Mr. Ayres (together, "Defendants" or "Appellants") and the HOA[4] in the Chancery Court for Monroe County (the "trial court") on June 13, 2022. In general, the Frisbeys claimed that Mr. Ayres, acting on Salem's behalf, illegally removed Mr. Frisbey from the HOA board. The Frisbeys alleged that Salem failed to provide Mr. Frisbey proper notice prior to his removal. They also claimed that the removal violated Tennessee Code Annotated section 48-58-108, which applies to Tennessee nonprofit corporations and provides that a director may be removed from a board only under certain circumstances. In that vein, the Frisbeys claimed that "State law trumps Section 8.5 of the Bylaws." They also alleged that Mr. Ayres and Salem violated fiduciary duties owed to the HOA and its members. As for relief, the Frisbeys asked for: 1) an injunction maintaining Mr. Frisbey as a board member pending a final hearing; 2) the trial court to lift the ban Mr. Ayres and Salem placed on the Frisbeys' Rarity Bay social club membership; 3) a ruling that Mr. Frisbey is a duly elected and serving board member; and 4) court costs to be taxed to Defendants.

The trial court held a hearing on the request for a temporary injunction on July 21, 2022. On July 29, 2022, the trial court entered an order granting the temporary injunction and allowing Mr. Frisbey to remain a board member pending a final hearing. The trial court reasoned that Mr. Frisbey may not have had proper notice, pursuant to the Bylaws, prior to the meeting at which he was removed. The trial court set the case for final hearing in February of 2023. Salem filed a motion to alter or amend the trial court's July 29, 2022 order, arguing that the trial court made several errors of fact and law. The trial court denied

---

[3] The other board member Salem removed initiated a separate legal action that is not at issue in this appeal.

[4] The HOA is not listed in the notice of appeal and did not file a brief in this Court.

that motion.  Salem also asked for the final hearing to be continued, but the trial court denied that request.

The trial court held a bench trial on February 7, 2023, at which it heard testimony from Mr. Frisbey and Mr. Ayres.  The trial court entered an order on March 16, 2023, concluding that Defendants wrongfully and without proper authority removed Mr. Frisbey as an HOA board member.  In general, the trial court reasoned that Defendants' actions were contrary to state law and that the Bylaws could not be contrary to state law.  The trial court reinstated the Frisbeys as club members, dissolved any suspension of their social club membership, and ruled that Mr. Frisbey could serve as a duly elected HOA board member pending the final hearing.  The trial court found that Defendants violated no fiduciary duties and dismissed that claim.  On April 13, 2023, Defendants filed a timely motion to alter or amend the trial court's ruling, arguing that the Bylaws are not inconsistent with either the Charter or state law.  The trial court entered a brief order on August 24, 2023, denying the motion to alter or amend. Defendants then filed a timely notice of appeal to this Court.

## ISSUES

Defendants raise the following issues for review which we restate slightly:

I.     Whether the trial court's March 16, 2023 order should be reversed because it violates the party-presentation principle?

II.     Whether the trial court erred in holding that the Declarant's right to amend the Bylaws, as set forth in § 13.10(a) of the Bylaws, was "not allow[ed]" by the Charter?

III.     Whether the trial court erred in holding that the Declarant's right to amend the Bylaws, as set forth in § 13.10(a) of the Bylaws, was not allowed by state law?

IV.     Whether the trial court erred in holding that the Declarant's right to remove directors, as set forth in § 8.5 of the Bylaws, was inconsistent with the Charter?

V.     Whether the trial court erred in holding that the Declarant's right to remove directors, as set forth in § 8.5 of the Bylaws was inconsistent with state law?

VI.     Whether the trial court erred in holding that Mr. Frisbey did not receive proper notice of his removal from the Association's Board of Directors?

## STANDARD OF REVIEW

This case was tried by the trial court sitting without a jury. Accordingly, we review the trial court's factual findings de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. *Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d). The trial court's legal conclusions, however, are reviewed de novo without a presumption of correctness, and we must "reach [our] own independent conclusions regarding these issues." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001).

Further, this case involves issues of statutory interpretation, as well as construction of the HOA's Bylaws and Charter. When construing statutes, "we review the trial court's decision de novo with no presumption of correctness." *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas and Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018) (citing *Wade v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 58 (Tenn. Ct. App. 2015)). The polestar of statutory interpretation is the intent and purpose of the legislature in enacting the statute. *Nationwide*, 578 S.W.3d at 30. We begin by "reading the words of the statutes using their plain and ordinary meaning in the context in which the words appear." *Id.* When the language is clear and unambiguous, we look no further than the language of the statute itself to determine its meaning. *Id.* With regard to the Charter and Bylaws, the rules of construction "are generally the same as those that govern the construction and interpretation of statutes, contracts, and other written instruments." *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 468 (Tenn. 2012) (citing 7A William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 3640 (perm.ed., rev.vol.2006)). Consequently, Charter and Bylaw construction is an issue of law we review de novo, "giv[ing] effect to the intent of the parties as revealed by the language of the charter and the circumstances surrounding its creation." *Id.*

## DISCUSSION

### I. The Party-Presentation Principle

Defendants first argue that the trial court erred by violating the party-presentation principle. Under the party-presentation principle, a court's review is limited to the issues presented by the parties. *State v. Bristol*, 654 S.W.3d 917, 924 (Tenn. 2022). The principle serves several important functions, including promoting fairness by ensuring the court's role as neutral arbiter, and ensuring that the parties have a meaningful opportunity to consider and respond to the issues raised. *Id.* at 924.

Our Supreme Court recently extrapolated on this concept in *Bristol*. In that case, a defendant was tried by a jury for aggravated sexual battery and rape of a child. *Id.* at 921. "At the close of evidence, the trial court delivered its oral jury charge[,]" and the defendant made no objections. *Id.* Nor did the defendant object to the written jury instructions. *Id.* After the defendant was convicted and sentenced, he moved the trial court for a new trial, raising no issues as to the jury instructions. *Id.* When the trial court denied his motion for new trial, the defendant appealed to the Court of Criminal Appeals. *Id.* Although the defendant raised a host of issues, none of them dealt with a discrepancy between the oral and written jury instructions. *Id.*

The Court of Criminal Appeals found that the defendant was not entitled to relief on any of his enumerated issues, but nonetheless determined that the trial court committed plain error and reversed. *Id.* at 922. The Court held that the oral and written instructions "were 'vastly different and d[id] not track one another.'" *Id.* (quoting *State v. Bristol*, No. M2019-00531-CCA-R3-CD, 2021 WL 1697914, at *4 (Tenn. Crim. App. Apr. 29, 2021)). Applying the party-presentation principle, our Supreme Court reversed the Court of Criminal Appeals and reinstated the defendant's conviction. *Id.* at 930. The High Court reasoned that "the Court of Criminal Appeals gave the parties no warning that it intended to consider whether there was a discrepancy between the oral and written jury instructions." *Id.* at 928. The Court further opined that the Court of Criminal Appeals abused its discretion by considering the jury-instruction issue without providing the parties notice and opportunity to be heard on same.

Here, Defendants claim that the trial court violated the party-presentation principle because its ruling purportedly goes outside the issues the parties raised. Specifically, Defendants take issue with the trial court finding not only that section 8.5 of the Bylaws is inconsistent with state law, but also that Salem lacked the authority to amend the Bylaws *at all*. As relevant, the trial court's final order provides:

> In this case, the Charter requires a 2/3 vote of the members to amend it. The By-Laws in Section 13 provide they may be amended by (1) the Declarant until termination of the "Development Period", or (2) by the members holding 67% of the votes in the Association. T.C.A. § 48-60-301 allows a specified person to amend By-Laws if the charter has provided it. It did not here; therefore the question then becomes "May the Declarant amend the By-Laws without the approval of the Board?" This Court answers this in the negative. T.C.A. § 48-60-201 et seq provides that any amendments to the By-Laws are to be amended by the Board of Directors or the members. Since this power was not reserved in the Charter, it is inconsistent with state law and therefore, state law prevails. Members do not need the approval of the Declarant to amend unless the Charter provides it pursuant to T.C.A. § 48-60-202(c). Here it does not. Further, the By-Laws may not allow an

amendment to increase or decrease the number of memberships authorized
for another class without a vote by the members.

According to Defendants, "the issue concerning the enforceability of Declarant's right to amend the By-Laws pursuant to § 13.10(a), was not an issue that Plaintiffs raised in the litigation. Indeed, that issue was not part of the case until the trial court *sua sponte* addressed it in the March 16 Order."

Nonetheless, the scenario now before us is distinguishable from *Bristol*. In that case, our Supreme Court clarified that the parties had no idea a discrepancy between the oral and written jury instructions was before the Court. In this case, however, whether the amended Bylaws, particularly section 8.5, are valid has always been the central issue. While the trial court may have taken a route of analysis slightly different from that of the parties, the trial court was not whole cloth considering a different issue, as the Court of Criminal Appeals did in *Bristol*. The trial court's ultimate conclusion here was that Salem lacked the authority to remove Mr. Frisbey from the HOA board, an issue the parties all had ample opportunity to brief and argue. We cannot conclude that the trial court abused its discretion because it reasoned its way to that conclusion in a manner not exactly the same as the Plaintiffs. Rather, *Bristol* provides that courts should proceed cautiously when addressing entirely unpled and unpreserved issues *sua sponte*, not that courts are strictly bound to the analyses offered by the parties when reaching an issue that both parties have had opportunity to address.

Moreover, as discussed below, we conclude that the trial court erred in finding that Salem lacks the authority to amend the Bylaws and reverse that holding. Thus, while the trial court did not violate the party-presentation principle here, the ruling itself is erroneous and warrants reversal; consequently, any error in this regard is harmless as to Defendants.

*II. The Bylaws*

Next, Defendants raise several issues regarding the trial court's decision that Salem improperly removed Mr. Frisbey as a board member. These issues ultimately turn on tensions between the Charter, the Bylaws, and Tennessee's Nonprofit Corporation Act (the "Act"). "The [Act], Tenn. Code Ann. § 48-51-101 et seq., regulates the operation of nonprofit corporations in this state." *Wellesley Builders, LLC v. Vill. of Cherry Glen Ass'n, Inc.*, No. M2002-03102-COA-R3-CV, 2004 WL 367646, at *4 (Tenn. Ct. App. Feb. 26, 2004). As such, it is undisputed that the Act applies here. Although case law construing the Act is limited, at least one of our Attorneys General has opined that the Act "attempts to provide a flexible approach to nonprofit corporations." Amending a Nonprofit Corporation's Charter, Tenn. Op. Att'ys Gen. No. 00-029 (2000). As such, "[m]any of the provisions in the Act include the language, 'unless its charter or bylaws provide otherwise,' so that a nonprofit corporation has the flexibility to structure and to operate the corporation

in the manner that it deems best suited to further its purposes." *Id.* That said, "some of the Act's provisions are mandatory and are not subject to modifications or variations." *Id.*

First, Defendants claim that the trial court erred in concluding that Salem lacks the authority as Declarant to amend the Bylaws at all. To reiterate, the trial court found that "the Charter does not allow a third party to amend or repeal the By-Laws and, under T.C.A. § 48-60-301, that power was not reserved in the Charter for the declarant." Applying plain-meaning review to the Charter, as we must, we conclude that the trial court erred in finding that Salem's right to amend the Bylaws is inconsistent with the Charter. All that the Charter provides regarding Bylaw amendment is that "[t]he By-Laws of the Association shall be adopted by the Board and may be altered, amended, or rescinded *in the manner provided in the By-Laws*. The quorum requirements for meetings of Members, and directors shall be set forth in the By-Laws." (Emphasis added). Accordingly, the Charter simply points back to the Bylaws regarding how said Bylaws may be amended. The Charter does not limit Bylaw amendment to one particular process, nor does the Charter explain how the Bylaws may be amended. While the trial court makes much of the fact that the Charter does not specifically lay out the Declarant's right to unilaterally amend the Bylaws, this point is inapposite in light of the Charter's plain language. *See Hughes*, 387 S.W.3d at 468 (explaining that the rules for interpreting corporate charters are "generally the same as those that govern the construction and interpretation of statutes, contracts, and other written instruments"). From the very beginning of the subdivision's development, the Declarant's rights have included the right to amend the Bylaws. Indeed, the Bylaws adopted on September 28, 1998 provide that "[u]ntil termination of the Development Period, the Declarant may unilaterally amend these By-Laws for any purpose." *See id.* (providing that when interpreting a corporate charter, we must "give effect to the intent of the parties as revealed by the language of the charter and the circumstances surrounding its creation"). As it is undisputed that the development period is ongoing and that Salem validly purchased the Declarant's rights in 2015, nothing in the Charter limits or is inconsistent with Salem's right to unilaterally amend the Bylaws.

Likewise, we cannot conclude that Salem's delineated right to amend the Bylaws is inconsistent with Tennessee law as reasoned by the trial court. The trial court found that "T.C.A. § 48-53-102[(a)](3) provides that By-Laws for a non-profit corporation must not be inconsistent with the Charter of the corporation or the laws of the State of Tennessee." The trial court correctly noted section 48-53-102(a)(3), which provides that a nonprofit corporation has the power to "[m]ake and amend bylaws, not inconsistent with its charter or with the laws of this state, for regulating and managing the affairs of the corporation[.]" The trial court also relied on section 48-60-301, which provides that "[t]he charter may require an amendment to the charter or bylaws to be approved in writing by a specified person or persons other than the board or members. Such a charter provision may only be amended with the approval of such person or persons in the form of a document." Based on the foregoing, the trial court reasoned that the power of a third person to amend or repeal

- 9 -

the Bylaws was not specifically laid out in the Charter and that Salem's Declarant rights are thus inconsistent with the above statutes. This reasoning, however, is circular. Again, the Charter simply provides that the Bylaws may be amended in any manner provided in the Bylaws, and there is nothing inconsistent between that Charter provision and section 48-60-301. While the trial court interpreted section 48-60-301 to mean that the Charter must explicitly provide if a specified person other than the board may amend the Bylaws, section 48-60-301 does not go so far.[5] Rather, section 48-60-301 merely provides that a charter *may* require the approval of a specified person other than the board members to amend bylaws. Again, however, this is inapposite because here, the Charter simply points back to the Bylaws regarding how to effectuate amendments, and the Bylaws have always allowed for amendments by the Declarant.

Thus, neither the Charter nor the statutes cited by the trial court are inconsistent with Salem's right, as Declarant, to amend the Bylaws generally. The trial court erred in holding otherwise, and we reverse that portion of the trial court's ruling.

Our inquiry does not end here, however, because whether Salem has the authority to amend the Bylaws in general is a different question than whether section 8.5 of the amended Bylaws is inconsistent with the Charter or Tennessee law. Stated differently, Salem's right to amend the Bylaws does not give the Declarant carte-blanche authority to implement any bylaw it wants if said bylaw is prohibited by the Act.

The trial court found that section 8.5 of the Bylaws on which Salem relied in removing Mr. Frisbey is inconsistent with both the Charter and Tennessee law. The trial court reasoned that "T.C.A. § 48-58-108 provides that directors are to be elected by the members of a non-profit corporation and provides the method for removal. Further, T.C.A. § 48-58-108(e) provides that a director elected by the members may be removed only by the members and only at a meeting called for that purpose." The trial court also reasoned that "[t]he By-Laws further provide in Section 13.11 that any conflict between Tennessee law, the By-Laws, the Charter, and the Declarations shall be resolved in accordance with Tennessee law first, the Charter second, the By-Laws third, and the Declarations fourth."

Accordingly, the crux of the parties' dispute is whether section 8.5 of the Bylaws is allowed under the Charter and the Act. The Charter merely provides that "[t]he method of election, removal, and filling of vacancies on the board of directors and the term of office of directors and officers shall be as set forth in the By-Laws." Once again, the Bylaws are not inconsistent with the Charter in this regard, as the Charter simply points back to the Bylaws.

---

[5] There is no case law construing section 48-60-301.

The trial court correctly noted, however, that section 8.5 of the amended Bylaws is inconsistent with the Act's provision on removing directors. While the Act explicitly provides the means by which a director can be removed at Tennessee Code Annotated section 48-58-108,[6] the HOA's amended Bylaws provide that Salem may unilaterally remove any board member with or without cause. Accordingly, the salient question is whether the Bylaws may provide a removal procedure inconsistent with the pertinent

[6] The Act provides that board members may be removed in the following manner:

(a) The members may remove one (1) or more directors elected by them with or without cause, unless the charter provides that directors may be removed only for cause. The charter or bylaws may specify what constitutes cause for removal.

(b) If a director is elected by a class, chapter or other organizational unit or by region or other geographic grouping, the director may be removed only by the members of that class, chapter, unit or grouping.

(c) Except as provided in subsection (i), a director may be removed under subsection (a) or (b) only if the number of votes cast to remove the director would be sufficient to elect the director at a meeting to elect directors.

(d) If cumulative voting is authorized, a director may not be removed if the number of votes, or if the director was elected by a class, chapter, unit or grouping of members, the number of votes of that class, chapter, unit or grouping, sufficient to elect the director under cumulative voting is voted against the director's removal.

(e) A director elected by members may be removed by the members only at a meeting called for the purpose of removing the director and the meeting notice must state that the purpose, or one (1) of the purposes, of the meeting is removal of the director.

(f) In computing whether a director is protected from removal under subsections (b)-(d), it should be assumed that the votes against removal are cast in an election for the number of directors of the class to which the director to be removed belonged on the date of that director's election.

(g) An entire board of directors may be removed under subsections (a)-(e).

(h) The board of directors of a corporation may remove a director without cause who has been elected by the board by the vote of two thirds ( $^{2}/_{3}$ ) of the directors then in office or such greater number as is set forth in the charter or bylaws.

(i) If at the beginning of a director's term on the board, the charter or bylaws provide that the director may be removed for missing a specified number of board meetings, the board may remove the director for failing to attend the specified number of meetings. The director may be removed only if a majority of the directors then in office vote for the removal.

Tenn. Code Ann. § 48-58-108.

statute. More specifically, we must determine whether section 48-58-108 is a mandatory or permissive section of the Act.

While our research revealed no case law dealing specifically with this question, the existing authority persuades us that the trial court correctly deemed section 8.5 of the Bylaws inconsistent with section 48-58-108 of the Act and thus improper. As noted *supra*, the Act "attempts to provide a flexible approach to nonprofit corporations[,]" and "[m]any of the provisions in the Act include the language, 'unless its charter or bylaws provide otherwise,' so that a nonprofit corporation has the flexibility to structure and to operate the corporation in the manner that it deems best suited to further its purposes." Tenn. Op. Att'ys Gen. No. 00-029 (2000). Section 48-58-108 does not contain the language, "unless its charter or bylaws provide otherwise," or any other similar language. To the extent section 48-58-108 is intended to be a permissive section, the legislature certainly could have included such language. Many other sections of the Act provide that its provisions apply unless the charter or bylaws provide otherwise. *See, e.g.*, Tenn. Code Ann. §§ 48-57-202; 48-58-111; 48-58-201; 48-58-203; 48-62-101; *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010) (explaining that in statutory construction, courts may assume that the General Assembly understands the "state of the law" and the manner in which courts have construed enacted statutes) (citing *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 683 (Tenn. 2005); *Hicks v. State*, 945 S.W.2d 706, 707 (Tenn. 1997)). Consequently, we echo the sentiment that "some of the Act's provisions are mandatory and are not subject to modifications or variations." Tenn. Op. Att'ys Gen. No. 00-029 (2000). In the absence of any language whatsoever providing that section 48-58-108 is a permissive section of the Act, we must conclude that it is mandatory. Because section 8.5 of the Sixth Amendment conflicts with section 48-58-108, the trial court correctly determined that section 8.5 is contrary to state law and improper. This portion of the trial court's ruling is affirmed.

Finally, Defendants challenge the trial court's ruling that Mr. Frisbey did not receive adequate notice prior to his removal as a board member. However, having already determined that Salem lacks the authority to unilaterally remove board members, it is irrelevant whether Salem gave Mr. Frisbey notice of its intent to remove him, and this issue is pretermitted.

To summarize, we reverse the trial court's ruling that Salem lacks the authority as Declarant to amend the HOA's Bylaws, as there is nothing in the Charter or state law prohibiting same. Salem's authority to amend the Bylaws, however, is not an unrestricted authority to enact *any* amendment it wants. Rather, Salem remains constrained by the Act and its mandatory provisions when it comes to the specific amendments it wishes to enact. In this particular case, the amendment at issue allowing Salem to unilaterally remove any board members with or without cause was contrary to a mandatory provision of the Act, and thus disallowed by same. Consequently, we affirm the trial court's ruling deeming

section 8.5 improper and reinstating Mr. Frisbey as an HOA board member. The issue regarding notice is pretermitted.

## CONCLUSION

The judgment of the Chancery Court for Monroe County is reversed in part and affirmed in part, and the case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the defendants, Michael Ayres and Salem Pointe Capital, LLC.

 

 

_____

KRISTI M. DAVIS, JUDGE