IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 4, 2024 Session

## LISA GARRAMONE v. TOMMY DUGGER ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 22CV-51924     Joseph A. Woodruff, Chancellor**

———————————————————

**No. M2023-00677-COA-R3-CV**

———————————————————

This Tennessee Public Participation Act appeal involves three parties and multiple issues. The plaintiff/appellee, Lisa Garramone ("Ms. Garramone"), while serving as a commissioner for the City of Nolensville, Tennessee, filed a complaint for, *inter alia*, false light invasion of privacy against four defendants, including appellants Jason Patrick ("Mr. Patrick") and Dr. Joe Curtsinger ("Dr. Curtsinger"). Ms. Garramone alleged that the defendants acted in concert to spread defamatory information about her during her 2022 re-election campaign. Each defendant responded by filing a petition to dismiss under the Tennessee Public Participation Act, Tennessee Code Annotated §§ 20-17-101 to -110 ("the TPPA"). Mr. Patrick also filed a motion for summary judgment; Dr. Curtsinger did not. Shortly thereafter, Ms. Garramone filed a notice of voluntary dismissal "with prejudice" of all of her claims under Tennessee Rule of Civil Procedure 41.01(1), to which the defendants objected. While the TPPA petitions were pending, this court ruled on the interplay between the TPPA and Rule 41.01(1) in *Flade v. City of Shelbyville* ("*Flade I*"), No. M2022-00553-COA-R3-CV, 2023 WL 2200729 (Tenn. Ct. App. Feb. 24, 2023). Consequently, the trial court ordered the parties to reargue the TPPA petitions considering this court's rulings in *Flade I*. Thereafter, the trial court determined that Ms. Garramone's voluntary dismissal mooted Dr. Curtsinger's TPPA petition but that it was ineffective against Mr. Patrick's TPPA petition because of his pending motion for summary judgment. The trial court further held that Mr. Patrick established that the TPPA applied because Ms. Garramone's claims were based on, related to, or in response to his exercise of the right to free speech. But the court held that Ms. Garramone failed to demonstrate a prima facie case for her tort claims as required by the TPPA. Thus, the court granted Mr. Patrick's petition, dismissed Ms. Garramone's claims against him, and ordered Mr. Patrick to submit his claim for attorney's fees and costs. Mr. Patrick sought $74,346.50 in attorney's fees and $920.09 in costs, but the court awarded him only $25,000.00 in attorney's fees and $66.91 in costs based on its determination that the TPPA's fee-shifting provision—Tennessee Code Annotated § 20-17-107—should be construed narrowly because it runs contra to the American Rule. Thus, the court found that Mr. Patrick was entitled to only those fees "reasonably incurred in obtaining the dismissal of the action," which did not include, *inter alia*, services rendered to prepare a defense against Ms. Garramone's tort claims. The court

reasoned that "more than $46,600.00 of his total fees and $853.18 of his costs" were incurred after Ms. Garramone filed her notice of voluntary nonsuit with prejudice, which the trial court stated disposed of the case "for all practical purposes." Mr. Patrick appeals the amount of the award for his attorney's fees and costs; he also seeks his attorney's fees and costs on appeal. Dr. Curtsinger appeals the denial of his TPPA petition as moot. For her part, Ms. Garramone contends the trial court erred by not denying Mr. Patrick's TPPA petition as moot when she filed her notice of voluntary dismissal "with prejudice." After these consolidated appeals were filed and argued, our Supreme Court rendered two decisions pertaining to the TPPA, *Charles v. McQueen*, 693 S.W.3d 262 (Tenn. 2024), and *Flade v. City of Shelbyville* ("*Flade II*"), —— S.W.3d ——, No. M2022-00553-SC-R11-CV, 2024 WL 4448736 (Tenn. Oct. 9, 2024). Based on the reasoning in *Flade II*, we hold that Dr. Curtsinger's TPPA petition did not curtail Ms. Garramone's "free and unrestricted" right to voluntarily dismiss her claims against him; thus, we affirm the dismissal of Dr. Curtsinger's TPPA petition as moot. We further find that Ms. Garramone's characterization of her dismissal as "with prejudice" did not place it outside the ambit of Rule 41.01(1)'s summary-judgment exception. As for Mr. Patrick's attorney's fees and costs, we rely upon the Supreme Court's reasoning in *Charles* and *Flade II* to find that the trial court erred by categorically excluding all fees and costs he incurred in preparing a defense to Ms. Garramone's claims. Accordingly, we vacate the award of Mr. Patrick's attorney's fees and costs and remand for reconsideration of the reasonable amount to which he is entitled under § 20-17-106 and to enter judgment accordingly. We also find that Mr. Patrick is entitled to recover his attorney's fees and costs incurred in this appeal pursuant to § 20-17-107, as explained in *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651 (Tenn. Ct. App. 2021), and remand for the trial court to make the appropriate award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Thor Y. Urness and Jeffrey W. Sheehan, Nashville, Tennessee, for the appellant, Jason Patrick.

George T. Davis, Jr., Brentwood, Tennessee, for the appellant, Joseph C. Curtsinger, Jr.

Kristen J. Johnson and Mark T. Freeman, Nashville, Tennessee, for the appellee, Lisa L. Garramone.

# OPINION

## FACTS AND PROCEDURAL BACKGROUND

This case stems from events involving Ms. Garramone, who served as a commissioner for the Town of Nolensville, Tennessee, from October 2020 to November 2022.

In September 2022, while Ms. Garramone was actively running for re-election, an email account from an organization titled Nolensville Against Drunk Drivers ("NADD") sent emails to various recipients, including the Nolensville Board of Commissioners and several Tennessee news outlets, claiming that Ms. Garramone had been given a free pass for driving drunk and for speeding due to her position as a commissioner. NADD also posted videos to YouTube that included excerpts from body camera footage of the two events.[1] Ms. Garramone claimed that Mr. Patrick and two others were responsible for disseminating the emails and videos. She also claimed that Dr. Curtsinger had posted signs in his front yard publicizing the emails and videos.[2]

---

[1] The first event occurred on October 17, 2020, two weeks into Ms. Garramone's role as commissioner, when she was attending a party at a friend's private property. Several hours into the party, Ms. Garramone and other party attendees decided to drive to a local market. Because she had consumed alcohol, Ms. Garramone maintains that she asked a sober individual to drive her car and that she rode as a passenger, although Defendants maintain that Ms. Garramone was the driver. When they returned to the party, they saw that a motor vehicle accident had occurred on the property and that several law enforcement agencies were present. Ms. Garramone then exited the vehicle and spoke with the responding police officers, who informed her that a ride-sharing service driver had backed into a ditch and that a tow truck was on the way. After Ms. Garramone left the scene, body camera footage shows one of the officers stating, "Commissioner or not, tell the Chief next time her ass is drinking and driving, I'm arresting her [Ms. Garramone]."

The second event occurred on December 11, 2020, when Ms. Garramone was pulled over for speeding by a Nolensville Police Officer. When the responding officers learned that Ms. Garramone was a commissioner, they stated among themselves that "the Chief will be calling, and we will have to void this [the ticket] out." The Nolensville chief of police did so shortly thereafter. Nevertheless, after the ticket was voided, Ms. Garramone paid a fine and completed a four-hour driving course for the December 2020 speeding ticket.

[2] Ms. Garramone stated that she believes that Mr. Patrick, the former vice mayor of Nolensville, and Tommy Dugger, a former alderman who had unsuccessfully run against her for a commissioner seat, were involved in NADD because, *inter alia*, they submitted public records requests for the body camera footage from October 17 and December 11. She believes that Dr. Curtsinger and Bobby Blevins were involved in NADD because they had both publicly disagreed with certain actions she took while serving as a commissioner. Mr. Dugger and Mr. Blevins are named defendants in this action but have not raised any issues on appeal.

On October 10, 2022, Ms. Garramone initiated this action against Mr. Patrick and Dr. Curtsinger (collectively, "Defendants"). Ms. Garramone asserted claims for, *inter alia*, false light invasion of privacy.[3] Ms. Garramone alleged that, in an effort to interfere with her re-election efforts, Defendants disseminated emails through NADD and edited videos of police body camera footage in order to portray her as, *inter alia*, having been arrested for driving under the influence.[4] Defendants each filed a TPPA petition to dismiss Ms. Garramone's claims, contending that they had engaged in free speech protected under the United States and Tennessee Constitutions as well as the TPPA. In addition to his TPPA petition, Mr. Patrick filed a motion for summary judgment on October 31, 2022. Dr. Curtsinger did not file a summary judgment motion.

On November 18, 2022, Ms. Garramone filed a notice of voluntary dismissal "with prejudice" under Rule 41.01(1) to dismiss all claims against Defendants. But Defendants objected to the dismissal due to their pending TPPA petitions. Mr. Patrick also objected based upon his pending motion for summary judgment. Following a hearing, which occurred on December 15, 2022, the court took the matters at issue under advisement.

On February 24, 2023, while the trial court's decision was still pending, this court rendered its decision in *Flade I*. Therein, we held that a pending TPPA petition does not abrogate the plaintiff's right to take a voluntary nonsuit under Rule 41.01(1). Accordingly, the trial court ordered the parties to reargue the TPPA petitions and the effectiveness of Ms. Garramone's voluntary dismissal in light of our decision in *Flade I*. Ms. Garramone acknowledged that Rule 41.01(1) restricts the right to take a voluntary nonsuit while a motion for summary judgment is pending, but she argued that the exception did not apply because her notice of voluntary dismissal was "with prejudice." After hearing arguments from the parties, the trial court entered a memorandum and order on April 17, 2023.

Citing this court's decision in *Purswani v. Purswani*, 585 S.W.3d 907 (Tenn. Ct. App. 2019), the trial court observed that Rule 41.01 does not distinguish between voluntary dismissals "with prejudice" and "without prejudice." The court opined that "the true distinction between different forms of dismissals is whether they are voluntary, governed by Tenn. R. Civ. P. 41.01, or involuntary, governed by Tenn. R. Civ. P 41.02, and not whether dismissal is with or without prejudice."

The trial court noted that Rule 41.01(1) affords plaintiffs an unrestricted right to voluntarily dismiss their claims with or without prejudice, subject to "the exceptions expressly stated in Tenn. R. Civ. P. 41.01(1), as well as to an implied exception which prohibits nonsuit when it would deprive the defendant of some vested right." Namely, Rule

---

[3] Ms. Garramone's other claims were for intentional and/or negligent infliction of emotional distress and civil conspiracy.

[4] Ms. Garramone ultimately lost her 2022 bid for re-election.

41.01(1) expressly bars voluntary dismissal "when a motion for summary judgment made by an adverse party is pending."

Because Mr. Patrick filed a motion for summary judgment prior to Ms. Garramone's attempted voluntary dismissal, the court held that "Ms. Garramone could not exercise her right to a voluntary dismissal against Mr. Patrick." Conversely, because "a TPPA petition to dismiss does not fall within an exception from the mandates of Rule 41.01," the trial court ruled that Ms. Garramone's voluntary dismissal mooted Dr. Curtsinger's TPPA petition.

In the same order, the trial court granted Mr. Patrick's TPPA petition based on its determination that "Ms. Garramone has failed to make a prima facie showing in support of her claims," as required by the TPPA. Accordingly, the court also concluded that Mr. Patrick's motion for summary judgment was moot. The court further found that Mr. Patrick was entitled to recover his reasonable attorney's fees and costs incurred in filing and prevailing upon his TPPA petition under the TPPA's attorney's fee-shifting provision, Tennessee Code Annotated § 20-17-107, which entitles successful petitioners to an award of fees and costs "incurred in filing and prevailing upon the petition." Tenn. Code Ann. § 20-17-107(a)(1).

In May 2023, Mr. Patrick filed a motion for determination of costs and fees, seeking to recover $74,346.50 in attorney's fees and $920.09 in costs incurred from the commencement of the action through the date of his motion. Around the same time, Dr. Curtsinger timely filed a notice of appeal from the order dismissing his TPPA petition as moot.[5]

On July 5, 2023, the court entered an order awarding Mr. Patrick $25,000.00 in attorney's fees and $66.91 in costs. The court noted that the amount Mr. Patrick had requested included fees incurred in the preparation of meritorious defense to Ms. Garramone's claims—but it opined that these fees were not "incurred in filing and prevailing upon the petition" because dismissal was a "foregone conclusion" after the December 2022 hearing. The court reasoned, "After Ms. Garramone dismissed her claims, for all practical purposes, this case ceased to be about alleged defamation, invasion of privacy and infliction of emotional distress, and became a lawsuit about little more than the amount of attorneys' fees Ms. Garramone would have to reimburse Mr. Patrick."

---

[5] The order dismissing Dr. Curtsinger's TPPA petition as moot was designated as a final appealable judgment pursuant to Tennessee Rule of Civil Procedure 54.02(1). Whether or not Dr. Curtsinger also had the right to an immediate appeal pursuant to Tennessee Code Annotated § 20-17-106 is not before us. *See* Tenn. Code Ann. § 20-17-106 ("The court's order dismissing or refusing to dismiss a legal action pursuant to a [TPPA] petition filed under this chapter is immediately appealable as a matter of right to the court of appeals.").

The court further held that the TPPA's fee-shifting provision should be construed narrowly because it "runs contrary to well established Tennessee common law which, with respect to fee shifting, follows the so called 'American Rule.'"[6] Accordingly, the court held that Mr. Patrick was entitled to his "fees reasonably incurred in obtaining the dismissal of the action" but not his "fees incurred for other purposes, such as . . . [preparing a] defense on the merits of the original claims, or prosecuting the assessment of attorney's fees." Thus, the court declined to award Mr. Patrick his attorney's fees incurred in mounting a defense to Ms. Garramone's tort claims, reasoning that these fees "b[ore] no relationship to whether [Ms. Garramone's] lawsuit should be dismissed pursuant to the TPPA."

This appeal followed.[7]

## ISSUES

Dr. Curtsinger, Mr. Patrick, and Ms. Garramone each present issues for our consideration in this consolidated appeal, which we rephrase as follows:

1. Dr. Curtsinger contends that the trial court erred in dismissing his TPPA petition as moot based on Ms. Garramone's Rule 41.01(1) notice of voluntary dismissal with prejudice.

2. Ms. Garramone contends that the trial court erred by failing to dismiss Mr. Patrick's TPPA petition after she filed her Rule 41.01(1) notice of voluntary dismissal "with prejudice."

3. Mr. Patrick contends that the trial court erred in its award of his attorney's fees under Tennessee Code Annotated § 20-17-107.

---

[6] The American Rule provides that "attorney's fees may not be awarded to the prevailing party absent statutory authorization or an agreement between the parties so providing." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998) (citations omitted).

[7] Mr. Patrick, Dr. Curtsinger, and Ms. Garramone appealed three separate judgments by the trial court. Dr. Curtsinger was the first to file an appeal. He appealed from the trial court's final judgment entered on April 17, 2023, and his appeal was assigned docket number M2023-00677-COA-R3-CV. Mr. Patrick appealed from the trial court's separate and later final judgment, entered on July 5, 2023. After Mr. Patrick's appeal was docketed with this court, the two appeals were consolidated under the later docket number, M2023-01113-COA-R3-CV. In her appellee's brief, Ms. Garramone appealed the trial court's denial of her attempted nonsuit as to Mr. Patrick by properly raising the issue in her appellee's brief following the entry of the court's July 5, 2023 final judgment. *See* Tenn. R. App. P. 27(b) ("If appellee is also requesting relief from the judgment, the brief of the appellee shall contain the issues and arguments involved in [her] request for relief as well as the answer to the brief of appellant.").

4. Mr. Patrick seeks to recover his attorney's fees and costs incurred in this appeal under Tennessee Code Annotated § 20-17-107.

## STANDARD OF REVIEW

As was the case in *Flade II*, this appeal requires an examination of the intersection between Tennessee Rule of Civil Procedure 41.01 and the TPPA. *See* 2024 WL 4448736, at *5. Therefore, we must interpret Rule 41 as well as the relevant statutory provisions of the TPPA. *See id.* "Such interpretation entails a question of law, which we review de novo upon the record with no presumption of correctness for the determination of the courts below." *Id.* (citations omitted).

We apply well-established precepts when interpreting a statute:

Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. When a statute is clear, we apply the plain meaning without complicating the task. Our obligation is simply to enforce the written language. It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. Further, the language of a statute cannot be considered in a vacuum, but should be construed, if practicable, so that its component parts are consistent and reasonable. Any interpretation of the statute that would render one section of the act repugnant to another should be avoided. We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed.

*In re Est. of Tanner*, 295 S.W.3d 610, 613–14 (Tenn. 2009) (citations omitted).

Likewise, "when interpreting a rule of civil procedure, we apply these same principles of statutory construction and the same standard of review." *In re Baby*, 447 S.W.3d 807, 818 (Tenn. 2014) (citing *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011)). "[T]he Tennessee Rules of Civil Procedure are promulgated by the Tennessee Supreme Court, approved by the General Assembly, and have the force and effect of law." *Flade I*, 2023 WL 2200729, at *5 (citing *Hall v. Haynes*, 915 S.W.3d 564, 571 (Tenn. 2010)).

ANALYSIS

I. MS. GARRAMONE'S NOTICE OF VOLUNTARY DISMISSAL

Dr. Curtsinger contends that the trial court erred in denying his TPPA petition as moot after Ms. Garramone voluntarily dismissed her claims against him pursuant to Rule 41.01. Relatedly, Ms. Garramone contends that the trial court erred by not denying Mr. Patrick's TPPA petition as moot after her notice of voluntary nonsuit.[8]

A. Dr. Curtsinger's TPPA Petition

The essence of Dr. Curtsinger's contention is that a TPPA petition survives a plaintiff's subsequent voluntary dismissal under Rule 41.01. But Ms. Garramone contends that she had a "free and unrestricted right" to voluntarily dismiss her claims against Dr. Curtsinger under Rule 41.01, which right was not limited by his TPPA petition because "none of the express or implied exceptions to Rule 41.01 apply to TPPA petitions." Based upon the Supreme Court's recent decision in *Flade II*, we agree with Ms. Garramone's assessment.

The right to voluntary dismissal is governed by Tennessee Rule of Civil Procedure 41.01(1), which provides, in relevant part:

> Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties . . . If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff.

---

[8] In his reply brief, Mr. Patrick insists that Ms. Garramone is barred from raising the above-stated issue because she failed to timely appeal the order granting his TPPA petition as required by Tennessee Code Annotated § 20-17-106. Mr. Patrick contends that Ms. Garramone's time to appeal the trial court's order granting his TPPA petition "ran and expired in the thirty days following the trial court's denial of her [Tennessee Rule of Civil Procedure 59] motion to alter or amend" entered May 16, 2023. We conclude that this argument is misplaced. Ms. Garramone's issue on appeal pertains to the trial court's decision to deny her notice of voluntary dismissal as to Mr. Patrick. She does not call into question the merits of the trial court's decision to grant the TPPA petition. And as noted earlier, Ms. Garramone appealed the trial court's denial of her voluntary nonsuit as to Mr. Patrick by properly raising the issue in her appellee's brief following the entry of the July 5, 2023 final judgment in this action. *See* Tenn. R. App. P. 27(b) ("If appellee is also requesting relief from the judgment, the brief of the appellee shall contain the issues and arguments involved in [her] request for relief as well as the answer to the brief of appellant.").

Absent any of the exceptions expressly stated in Rule 41.01(1) or the implied exception that prohibits voluntary dismissal where it would deprive the defendant of a vested right, a plaintiff's right to voluntarily dismiss their claims prior to trial is "free and unrestricted" and is not subject to court approval. *Lacy v. Cox*, 152 S.W.3d 480, 484 (Tenn. 2004) (citing *Anderson v. Smith*, 521 S.W.2d 787, 790 (Tenn. 1975); *Rickets v. Sexton*, 533 S.W.2d 293, 294 (Tenn. 1976); *Stewart v. Univ. of Tennessee*, 519 S.W.2d 591, 592 (Tenn. 1974); Lawrence A. Pivnick, *Tenn. Circuit Court Practice*, § 23:1, at 834–35 (2003)).

In *Flade II*, the defendants each filed TPPA petitions to dismiss Mr. Flade's tort claims against them. *Id.* at *2. However, prior to the scheduled hearing on the defendants' TPPA petitions, Mr. Flade filed a notice of voluntary dismissal without prejudice pursuant to Rule 41.01(1). *Id.* at *3. The trial court declined to adjudicate the defendants' TPPA petitions, finding that Mr. Flade had "a 'free and unrestricted' right to dismiss [his] action without prejudice" and that "the existence of the TPPA petitions pending at the time of the notice of voluntary dismissal did not qualify as an exception to that general principle." *Id.* On appeal, this court affirmed. *Id.* at *4. Our Supreme Court granted permission to appeal to determine, *inter alia*, whether "the right to take a voluntary nonsuit under Rule 41.01(1) was 'subject to' the provisions of the TPPA"; whether "the TPPA confers statutory rights that vest upon the filing of a TPPA petition"; and whether "the substantive rights conferred by the TPPA qualify as counterclaims for purposes of Rule 41.01(1)." *Id.*

The Supreme Court found that a plaintiff's right to voluntary nonsuit under Rule 41.01(1) is not "currently 'subject to' the provisions of the TPPA" because the text of the TPPA "does not clearly limit or otherwise address the right to take a voluntary nonsuit after the filing of a TPPA petition." *Id.* at *13. With regard to the vested rights exception, the Court noted that vested rights are rooted in due process, *id.* at *16, and found that a TPPA petition is akin to a legal defense and does not create a private cause of action protected by due process guarantees. *Id.* at *17–18. Thus, the Court concluded that it "do[es] not believe the mere filing of a TPPA petition translates to a vested right to have it adjudicated under any circumstance." *Id.* at *17. The Court further found that a TPPA petition does not constitute a counterclaim within the meaning of Rule 41.01(1) because, while a counterclaim seeks affirmative relief based on a cause of action, *id.* at *20, "a TPPA petition operates as a 'mere denial[] of the plaintiff's cause of action,'" *id.* at *21 (quoting *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 416 (Tenn. 1997)).

As was the case in *Flade II*, at the time of Ms. Garramone's voluntary nonsuit, Dr. Curtsinger's TPPA petition "had not been argued or submitted to the trial court for decision." *See id.* at *18 n.28. Thus, as the Court held in *Flade II*, Ms. Garramone had a "free and unrestricted" right to voluntarily nonsuit her claims against Dr. Curtsinger unless his TPPA petition fell within an express or implied exception from the mandates of Rule 41.01(1). *See id.* at *5. We conclude that it did not.

As stated in *Flade II*, a plaintiff's right to voluntary nonsuit is not "currently 'subject to' the provisions of the TPPA," *id.* at *13, a TPPA petition is not a counterclaim within the meaning of Rule 41.01, *id.* at *20, and "the mere filing of a TPPA petition does not implicate the vested rights exception to Rule 41.01," *id.* at *18. And unlike Mr. Patrick, Dr. Curtsinger did not file a motion for summary judgment in addition to his TPPA petition.[9] Therefore, Dr. Curtsinger's TPPA petition, on its own, did not curtail Ms. Garramone's right to voluntarily dismiss her claims against him under Rule 41.01(1).

Because Ms. Garramone had a free and unrestricted right to voluntarily dismiss her claims against Dr. Curtsinger, we affirm the trial court's decision to dismiss Dr. Curtsinger's TPPA petition as moot.

### B. Mr. Patrick's TPPA Petition

Ms. Garramone argues that, as with Dr. Curtsinger's petition, the trial court should have denied Mr. Patrick's TPPA petition as moot. Ms. Garramone does not dispute that a pending motion for summary judgment prevents voluntary dismissal "without prejudice," but she contends that the same rule should not apply here because her notice of dismissal was "with prejudice." We disagree.

The phrases "with prejudice" and "without prejudice" refer to the plaintiff's right to sue the defendant again on the same cause of action. *See Long v. Kirby-Smith*, 292 S.W.2d 216, 221 (Tenn. Ct. App. 1956). A dismissal "with prejudice" indicates that the dismissed claim was adjudicated on its merits. *See Britt v. Usery*, No. W2022-00256-COA-R3-CV, 2024 WL 195879, at *9 (Tenn. Ct. App. Jan. 18, 2024) (observing that "on the merits" means, *inter alia*, "that a determination is with prejudice"). When a claim is adjudicated on its merits, the doctrine of res judicata bars the claimant from reasserting the same claim against the same defendant in a future action. *See Regions Bank v. Prager*, 625 S.W.3d 842, 848 (Tenn. 2021).

Tennessee Rule of Civil Procedure 41.01(1) permits plaintiffs to "take a voluntary nonsuit to dismiss the action **without prejudice**." (Emphasis added). And Rule 41.01(2) states that a notice of voluntary dismissal "operates as an adjudication upon the merits **when filed by a plaintiff who has twice dismissed in any court an action based on or**

---

[9] Furthermore, Ms. Garramone's right to nonsuit her claims against Dr. Curtsinger was not limited by Rule 23.05, 23.06, or 66 as this is not a class action, a shareholder derivative action, or an action in which a receiver has been appointed. *See Himmelfarb v. Allain*, 380 S.W.3d 35, 40 (Tenn. 2012) (citing Tenn. R. Civ. P. 41.01(1); Tenn. R. Civ. P. 41.01. adv. comm. cmt. (2002)). This is also not a case that was "refiled following a voluntary nonsuit taken in a will contest action [or] a Governmental Tort Liability Act action[]" nor is it one where "a voluntary nonsuit is taken outside the applicable statute of limitations and the one year permitted by the saving statute." *See id.* (citing Tenn. R. Civ. P. 41.01 adv. comm. cmt. (2005), (2006); Lawrence A. Pivnick, 1 *Tenn. Circuit Court Practice* § 23:1).

**including the same claim**." (Emphasis added). Thus, a voluntary nonsuit cannot be "with prejudice" unless the plaintiff has "twice dismissed in any court an action based on or including the same claim."

Tennessee jurisprudence supports this construction. The Tennessee Supreme Court has held that, when an adjudication is not "on the merits," the words "with prejudice" are merely surplusage. *Garrett v. Corry Foam Prod., Inc.*, 596 S.W.2d 808, 810 (Tenn. 1980). This is because Tennessee does not recognize the procedural device called "retraxit," which is "an open and voluntary renunciation of [the plaintiff's] suit in court" by which the plaintiff "forever loses his action." *Id.* (quoting *Long v. Kirby-Smith*, 292 S.W.2d 216, 221 (Tenn. Ct. App. 1956)). Tennessee courts are without power to enter an order of retraxit. *Id.* ("Rule 41 of the Tennessee Rules of Civil Procedure governs both voluntary and involuntary dismissals of actions and nothing in either the text of that rule or in the committee comments thereto changes the law hereinabove discussed, i.e., that retraxits are not recognized in Tennessee.").

Here, Ms. Garramone attempted to voluntarily nonsuit her claims under Rule 41.01(1) "with prejudice." In her appellate brief, she explains that she "sought to dismiss her claims forever, barring any future action on her claims." In essence, Ms. Garramone attempted to take a retraxit, which is not recognized in the courts of this state. *See id.* As we have observed, "Regarding the application of Rule 41.01, no distinction appears to exist in relation to whether a voluntary dismissal is categorized as with or without prejudice." *Purswani*, 585 S.W.3d at 914.[10]

Because Rule 41.01(1) does not authorize a plaintiff to take a notice of voluntary dismissal "with prejudice," we conclude that Ms. Garramone's notice of voluntary dismissal was subject to the summary-judgment exception in Rule 41.01(1).[11]

---

[10] The result might be different had Ms. Garramone voluntarily dismissed her claims as part of a settlement. *See In re Est. of Welch*, No. M2023-00118-COA-R3-CV, 2023 WL 5846300, at *6 (Tenn. Ct. App. Sept. 11, 2023) ("We have held before that a trial court's decision to dismiss a case with prejudice is proper where the trial court has concluded that there is an enforceable agreement that resolves all claims." (citations omitted)), *appeal denied* (Mar. 6, 2024).

[11] Furthermore, as the Supreme Court explained in *Garrett*:

There is an additional reason why the dismissal order here in issue was insufficient on its face to constitute a retraxit or judgment on the merits, if such an order were recognized in this State, and that is that the order was not signed by the plaintiff but only by his attorney who had no implied authority to release or surrender the plaintiff's right of action. "Attorneys have no power to surrender substantial rights of their clients without express authority. 3 Am. & Eng. Enc. Of Law (2nd Ed.) 357; *Holms v. Johnston*, 12 Heisk. (155) 158." (Emphasis added.) *Davis v. Home Ins. Co.*, 127 Tenn. 330, 337, 155 S.W. 131, 133, 44 L.R.A., N.S., 626 (1913); 7 Am.Jur.2d Attorneys at Law s 125 (1963); 7A C.J.S. Attorney and Client s 198 (1980).

## II. Mr. Patrick's Attorney's Fees at Trial

Mr. Patrick submits that the trial court erred in construing the TPPA's attorney's fee-shifting provision "narrowly" and declining to award most of his requested attorney's fees and costs. He contends that the TPPA requires a broad statutory construction and that, when construed broadly, the TPPA's fee-shifting provision encompasses "all pre-dismissal fees and costs." Ms. Garramone contends that the trial court's award of attorney's fees was proper because "Mr. Patrick requested fees for work that was unfruitful."

We review a trial court's interpretation of the scope of attorney's fees and costs under § 20-17-107 de novo, with no presumption of correctness. *Nandigam Neurology, PLC*, 639 S.W.3d at 657 (citing *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018)).

On July 5, 2023, the trial court entered an order on Mr. Patrick's motion for attorney's fees and costs in which it expressly found that Tennessee Code Annotated § 20-17-107 "runs contrary to well established Tennessee common law which, with respect to fee shifting, follows the so called 'American Rule.'"[12] Significantly, the trial court went on to state, "For this reason, the TPPA, like all statutory fee shifting provisions, must be read and applied narrowly and limited to the purposes underlying the existence of the fee shifting right." Mr. Patrick contends this was an error of law that influenced the trial court's assessment of the attorney's fees and costs he was entitled to recover under the TPPA.

We begin by noting, as the trial court correctly noted, that it is generally true that statutes in derogation of the common law must be strictly construed. *See Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002) (quoting *Ezell v. Cockrell*, 902 S.W.2d 394, 399 (Tenn. 1995)). However, the TPPA provides that it "shall be construed broadly to effectuate its purposes and intent." Tenn. Code Ann. § 20-17-102; *see also Flade II*, 2024 WL 4448736, at *7. This legal principle was emphasized by our Supreme Court not only in *Flade II* but also in *Charles*, both of which decisions were released after the trial court ruled on Mr. Patrick's attorney's fees.

In both *Charles* and *Flade II*, the Supreme Court emphasized the fact that the TPPA should be construed broadly. In its first opportunity to address the scope of the TPPA—the *Charles* case—the Court summarized the purpose and intent of the TPPA as follows:

---

596 S.W.2d at 810.

[12] As stated above, the American Rule provides that "attorney's fees may not be awarded to the prevailing party absent statutory authorization or an agreement between the parties so providing." *John Kohl & Co. P.C.*, 977 S.W.2d at 534 (citations omitted).

The Tennessee Public Participation Act ("TPPA") was enacted in 2019 and is Tennessee's version of an anti-SLAPP statute. Tennessee Public Participation Act, ch. 185, §§ 1–2, 2019 Tenn. Pub. Acts 455–57 (codified at Tenn. Code Ann. §§ 20-17-101 to -110 (2021)). The acronym "SLAPP" stands for strategic lawsuits against public participation. The primary aim of a SLAPP is not to prevail on the merits, but rather to chill the speech of the defendant by subjecting him or her to costly and otherwise burdensome litigation. *See* 2 Rodney A. Smolla, *Law of Defamation* § 9:107 (2d ed.), Westlaw (database updated May 2024); *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 658 (Tenn. Ct. App. 2021). Because SLAPPs threaten to interfere with the exercise of constitutionally protected rights, more than twenty states have adopted anti-SLAPP statutes to protect defendants "from the often-punishing process of defending" such suits. Smolla, *supra*, § 9:107.

The TPPA attempts to strike a balance between two competing interests. On the one hand, it seeks to "encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law." Tenn. Code Ann. § 20-17-102. "[A]t the same time," it also seeks to "protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Id.*

Like many other anti-SLAPP statutes, the TPPA establishes a procedure for swift dismissal of non-meritorious claims. The defendant in a SLAPP suit may file a petition to dismiss the action within sixty days of service of the action or "at any later time that the court deems proper." *Id.* § 20-17-104(a)–(b).

Courts engage in a two-step analysis to rule on a TPPA petition. First, the court determines whether the petitioner has made a prima facie case that the challenged lawsuit "is based on, relates to, or is in response to [the petitioner's] exercise of the right to free speech, right to petition, or right of association." *Id.* § 20-17-105(a). If the petitioner has not made this showing, the court denies the petition. *See id.* § 20-17-105(b). But if the petitioner succeeds at the first step, the court next determines whether the respondent has made a prima facie case for each essential element of his claim. *Id.* **If the respondent meets this burden, the court must deny the petition unless "the petitioning party establishes a valid defense to the claims in the legal action**." *Id.* § 20-17-105(b)–(c). Otherwise, the court must grant the petition and dismiss the suit with prejudice. *Id.* § 20-17-105(e).

.    .    .

- 13 -

The TPPA also has a fee shifting provision. **If a court grants a TPPA petition for dismissal, it "shall award" the petitioner "[c]ourt costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon the petition" along with "[a]ny additional relief, including sanctions, that the court determines necessary to deter repetition of the conduct by the party who brought the legal action or by others similarly situated."** *Id.* § 20-17-107(a)(1)–(2). Conversely, if a court finds that a petition was frivolous or solely dilatory, the court may award to the respondent costs and fees incurred to oppose the petition. *Id.* § 20-17-107(b).

*Charles*, 693 S.W.3d at 267–68 (emphasis added).

In its more recent decision, *Flade II*, the Court quoted its *Charles* decision at length and noted:

[T]he General Assembly saw fit to state the purpose of **the TPPA** in the statutory text and to provide that the legislation "**shall be construed broadly to effectuate its purposes and intent.**" Tenn. Code Ann. § 20-17-102. **Furthermore, the TPPA states that it "is intended to provide an additional substantive remedy to protect the constitutional rights of parties and to supplement any remedies which are otherwise available to those parties under common law, statutory law, or constitutional law or under the Tennessee Rules of Civil Procedure**." Tenn. Code Ann. § 20-17-109.

2024 WL 4448736, at *7 (emphasis added).

As noted earlier, in its July 5, 2023 order awarding attorney's fees to Mr. Patrick, the court stated that § 20-17-107, like all statutory fee-shifting provisions, "must be read and applied narrowly and limited to the purposes underlying the existence of the fee shifting right." For the reasons stated in *Charles* and *Flade II*, as noted above, we respectfully disagree with the trial court's ruling that the TPPA's fee-shifting provision "must be read and applied narrowly"; however, we agree with the trial court's assessment that the fee-shifting provision should be "limited to the purposes underlying the existence of the fee shifting right."

With that in mind, we turn our attention to the trial court's assessment of what legal services are reasonable and necessary in "prevailing upon the petition." We begin with the plain language of the TPPA's fee-shifting provision:

(a) If the court dismisses a legal action pursuant to a petition filed under this chapter, the court shall award to the petitioning party:

- 14 -

(1) Court costs, reasonable attorney's fees, discretionary costs, and other expenses **incurred in filing and prevailing upon the petition**; and

(2) Any additional relief, including sanctions, that the court determines necessary to deter repetition of the conduct by the party who brought the legal action or by others similarly situated.

Tennessee Code Annotated § 20-17-107(a) (emphasis added).

The trial court ruled that the legal services Mr. Patrick's attorneys provided in preparing "a defense" to the claims of Ms. Garramone were not "incurred in prevailing upon the petition" and, therefore, were not recoverable. In pertinent part, the trial court's July 5, 2023 order reads:

> After Ms. Garramone dismissed her claims,[13] for all practical purposes, this case ceased to be about alleged defamation, invasion of privacy and infliction of emotional distress, and became a lawsuit about little more than the amount of attorneys' fees Ms. Garramone would have to reimburse Mr. Patrick.
>
> . . .
>
> In this specific case, Mr. Patrick seeks an award of attorneys' fees in the total amount of $74,346.50. Of that total, $27,726 was incurred and billed prior to December 9, 2022. As of that date, Ms. Garramone had already attempted to dismiss her claims against Mr. Patrick. The Court held a hearing on all pending TPPA petitions on December 15, 2022 and took the case under advisement. Between December 1st and December 15, 2022, Mr. Patrick's attorneys incurred, and subsequently billed Mr. Patrick, an additional $10,189 for their legal services. So, as of the time the Court took the TPPA petitions under advisement, Mr. Patrick had incurred total fees of $37,915, of which $27,726 had been billed; half of the total fees Mr. Patrick now seeks to recover from Ms. Garramone were incurred for legal services rendered thereafter.

---

[13] We respectfully disagree with the conclusion that Ms. Garramone "dismissed her claims" against Mr. Patrick. To the contrary, the trial court declined to allow Ms. Garramone to dismiss her claims against Mr. Patrick due to his pending motion for summary judgment. *See E.T., Inc. v. Hasty*, No. M2023-00253-COA-R3-CV, 2024 WL 1156558, at *3 n.2 (Tenn. Ct. App. Mar. 18, 2024) ("A pending motion for summary judgment removes the ability of a plaintiff to take a voluntary dismissal as a matter of right, but the trial court may still permit in appropriate circumstances a voluntary dismissal while a summary judgment motion is pending.") (citations omitted). Ms. Garramone's claims were not dismissed until the trial court granted Mr. Patrick's TPPA petition by order entered on April 17, 2023.

- 15 -

.    .    .

This Court construes Tenn. Code Ann. § 20-17-107(a)(1) as a statutorily authorized attorney's fee shifting provision in favor of a TPPA petitioner, like Mr. Patrick, who succeeds in obtaining dismissal of the original "legal action" that violated the TPPA petitioner's rights. **Because this statutory fee shifting is in derogation of Tennessee common law, it must be construed narrowly.** In enacting the fee shifting provision of the TPPA, the General Assembly could have crafted such a provision to expressly award all court costs, reasonable attorney's fees, discretionary costs, and other expenses incurred by a successful TPPA petitioner throughout the pendency of the entire case. However, **the General Assembly chose to limit this award by stating a successful petitioner is awarded the above-stated expenses and fees "incurred in filing and prevailing upon the petition**[."]

This Court cannot ignore such clear and precise language enacted by the General Assembly in creating an express limit to the expenses and fees recoverable by a successful TPPA petitioner, with such express limit being the purpose by which these expenses and fees were incurred. **Therefore, fees reasonably incurred in obtaining the dismissal of the action are subject to fee shifting, and fees incurred for other purposes, such as sanctions other than dismissal, defense on the merits of the original claims, or prosecuting the assessment of attorney's fees are not. The detailed billing records submitted by Mr. Patrick's counsel document a great deal of work devoted by these attorneys to matters other than dismissal pursuant to the TPPA. These services are justifiably necessary for the substantive defense of Ms. Garramone's defamation, invasion of privacy, and other tort claims, but they bear no relationship to whether her lawsuit should be dismissed pursuant to the TPPA. Consequently, these additional fees are not recoverable pursuant to § 20-17-107(a)(1).** To put a finer point on this conclusion: the TPPA's fee shifting regime operates as a special purpose analogue to the fee shifting right found in Tenn. Code Ann. § 20-12-119(c) for a successful movant who has obtained involuntary dismissal of a civil action pursuant to Rule 12 for failure to state a claim on which relief can be granted. The TPPA does not create a general right for prevailing parties to an award of all attorneys' fees incurred in the case.

(Emphasis added) (footnotes omitted). Accordingly, the trial court excluded all fees incurred by Mr. Patrick's attorneys that related to his "defense on the merits of the [Ms. Garramone's] claims" and capped her attorney fee award at $25,000.00.

In *Charles*, the Supreme Court noted that a TPPA petitioner may have "to **establish a valid defense to the claims in the legal action**" to "**prevail**" on a TPPA petition. 693 S.W.3d at 268 (citing Tenn. Code Ann. § 20-17-105(b)–(c)) (emphasis added). As the Court explained, the TPPA petitioner must establish a valid defense in the third step of a TPPA analysis if the plaintiff, here, Ms. Garramone, presents a prima facie case for each essential element of her claim in the second step of the TPPA analysis. Specifically, the Court noted:

> [I]f the petitioner succeeds at [showing that the TPPA applies to the claims presented], the court next determines whether the respondent has made a prima facie case for each essential element of his claim. [Tenn. Code Ann. § 20-17-105(b)]. **If the respondent [the original plaintiff] meets this burden, the court must deny the petition unless "the petitioning party establishes a valid defense to the claims in the legal action."** *Id.* § 20-17-105(b)–(c). Otherwise, the court must grant the petition and dismiss the suit with prejudice. *Id.* § 20-17-105(e).

*Charles*, 693 S.W.3d at 267–68 (emphasis added).

Based upon the reasoning in *Charles* and the express language in Tennessee Code Annotated § 20-17-107(a), we agree with the trial court's ruling that "fees reasonably incurred in obtaining the dismissal of the action are subject to [the] fee shifting [provision of the TPPA];" however, we respectfully disagree with the trial court's determination that "fees incurred for other purposes, such as sanctions other than dismissal, defense on the merits of the original claims, or prosecuting the assessment of attorney's fees are not." As the Supreme Court explained in *Charles*:

> If a court grants a TPPA petition for dismissal, it "shall award" the petitioner "[c]ourt costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon the petition" along with "[a]ny additional relief, including sanctions, that the court determines necessary to deter repetition of the conduct by the party who brought the legal action or by others similarly situated." *Id.* § 20-17-107(a)(1)–(2).

*Charles*, 693 S.W.3d at 268.

We also respectfully disagree with the trial court's conclusion that "for all practical purposes, this case ceased to be about alleged defamation, invasion of privacy and infliction of emotional distress" as of December 15, 2022, when the trial court took under advisement Mr. Patrick's TPPA petition and Ms. Garramone's notice of voluntarily dismissal. To the contrary, the trial court could have subsequently ruled that Ms. Garramone had established a prima facie case for each essential element of her claims, in which event Mr. Patrick would have had to establish **a valid defense** to her claims **to prevail** on his TPPA petition.

*See id.* Thus, as Mr. Patrick contends, the dismissal of Ms. Garramone's case was not a "foregone conclusion" as of December 15, 2022.[14]

Accordingly, we vacate the trial court's award of Mr. Patrick's attorney's fees and costs and remand with instructions to award Mr. Patrick his "court costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon the petition" as mandated in Tennessee Code Annotated § 20-17-107(a) and as discussed in *Charles* and *Flade II*.

## IV.  MR. PATRICK'S ATTORNEY'S FEES ON APPEAL

Mr. Patrick also requests an award of his attorney's fees on appeal. This court has held that Tennessee Code Annotated § 20-17-107 "allows for an award of reasonable attorney's fees incurred on appeal, provided that the court dismisses a legal action pursuant to a petition filed under this chapter and that such fees are properly requested in an appellate pleading." *Nandigam*, 639 S.W.3d at 670.

In this appeal, Ms. Garramone contended that the trial court erred in denying her Rule 41.01 voluntary dismissal of her claims against Mr. Patrick. She also challenged Mr. Patrick's claim to recover his attorney's fees and costs as authorized under Tennessee Code Annotated § 20-17-107. Mr. Patrick prevailed on both issues. Thus, on remand, the trial court is requested to make the appropriate award and enter judgment accordingly.

## CONCLUSION

Based on the foregoing, we affirm the trial court's dismissal of Dr. Curtsinger's TPPA petition, affirm the denial of Ms. Garramone's Rule 41.01 motion as to Mr. Patrick, and vacate the court's award of Mr. Patrick's attorney's fees. We also remand with instructions that the court award Mr. Patrick his reasonable and necessary attorney's fees and costs incurred in filing and prevailing upon his petition in the trial court and in this

---

[14] As Mr. Patrick argues in his brief, dismissal of Ms. Garramone's claims was not "a foregone conclusion" until the trial court rendered its decision in its April 17, 2023 order, which reads, in pertinent part:

> The Court finds Mr. Patrick presented a prima facie case that this legal action related to his free speech under the TPPA. The Court finds Ms. Garramone failed to present a prima facie case for her claims of false light, intentional infliction of emotional distress, and negligent infliction of emotional distress. Because her underlying tort claims are not actionable, Ms. Garramone's claim for civil conspiracy must also fail. Therefore, the Court grants Mr. Patrick's [TPPA] Petition for Dismissal. Because Mr. Patrick's Petition for Dismissal has been granted, his Motion for Summary Judgment and Motion to Amend his petition are deemed moot. Pursuant to Tenn. Code Ann. [§] 20-17-107, Mr. Patrick is entitled to his court costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon his petition.

appeal. Costs of appeal are assessed equally against Ms. Garramone, Mr. Patrick, and Dr. Curtsinger.

_____
FRANK G. CLEMENT JR., P.J., M.S.